| 57   555
|1084  666

THOMAS R. CALDWELL, ADMR., ET AL. *v.* LAFAYETTE WILLIS.

1. BEQUEST. *Limitation. Perpetuity.*

A bequest to a man " during his life, and at his death to his child or children then living and the descendants of such child or children and their heirs for ever," makes him absolute owner, so that he can dispose of the entire interest to the exclusion of the limitees.

2. SAME. *Void limitation. Interest of first donee.*

If void limitations are engrafted upon a bequest manifesting an intention to dispose of the entire interest in the personalty, it vests absolutely in the first legatee.

3. SAME. *Remainder after life-interest. Perpetuity.*

The limitation, after the life-interest, to the legatee's " child or children then living, and the descendants of such child or children and their heirs for ever," is void because it violates the rule against perpetuities.

4. SAME. *Limitation to a class. Void as to individual.*

If the limitation is void as to any of the persons in the class to which it is made, it is void as to the whole class.

5. SAME. *Contingent legacy. Rule against perpetuity.*

A limitation by way of executory bequest is void, if the absolute interest may not vest within a life or lives in being at the testator's death, and twenty-one years and ten months thereafter.

6. SAME. *Conditional limitation. " Dying without children."*

The Act of 1822, § 26 (Hutch. Code 610), applies only to limitations contingent on a person dying without children or descendants, and does not add the words " then living " to a limitation to the descendants of the donee of a life-interest.

7. SAME. *Construction of will. Supplying words.*

If the testator's intent, manifested by the entire will, carefully prepared by a skilful conveyancer, was to omit the words " then living," they will not be supplied by the court, in order to sustain the limitation.

8. SAME. *Rejecting words.*

While a word may be rejected, if the other parts of the will show that it was improperly and incautiously used, it will not be discarded on a mere conjecture, based on a presumption that the testator intended a provision similar to the Statute of Distributions.

9. SAME. *Land to be sold for legacies. Personalty.*

If land is directed to be sold, and legacies paid with the proceeds, it will be treated by a court of equity, in construing the will, as personal property, even before the sale.

APPEAL from the Chancery Court of Monroe County.

Hon. L. HAUGHTON, Chancellor.

*Murphy, Sykes & Bristow*, for the appellants.

1. As children of Daniel Willis, living at his death, the appellants are entitled, under the will, as remainder-men, to his half of the proceeds of the residuum; and, if Lafayette Willis dies without children or descendants, they, as representatives of Daniel Willis, the surviving contingent remainder-man, will be entitled to two thirds of Lafayette Willis's share. It is objected that the effect of the will is to create an estate-tail, or a perpetuity, and that by our statute it became an estate in fee-simple. This is the controversy. If the language of the will can be reasonably construed, so as to mean a limitation, which is legal, the court will adopt that construction *ut res magis valeat quam pereat.* The limitation is an estate to Daniel Willis for life, remainder in fee-simple at his death to his child or children or their descendants then living, or, if the widow has a life-estate, a remainder to Daniel Willis for life, remainder to his child or children or their descendants, living at his death, in fee-simple. Considering the property devised as real estate, either of the limitations is good, both under the statute and at common law, and considering it as personal property, both are good at common law, and there is no restriction on them under the statute. The statute (Hutch. Code, pp. 609, 610, §§ 24, 27) allows, as an exception to the clause abolishing estates-tail, an estate ·in lands to be limited to any number of donees living and the heirs, or the heirs of the body of the remainder-man, and, in default thereof, to the right heirs of the donor in fee-simple, and further provides that an estate may be limited, by way of remainder, to an unborn child, who may take, even if born after the father's death, contrary to the decision in Shelley's case that a child *en ventre sa mere* cannot take an estate by way of purchase, so as to oust the heir *in esse.* The limitation in the· case at bar does not go as far as the statute allows, and would be good thereunder. But as no estate-tail is attempted to be created by the will, to come under either the prohibition or the sanction of the proviso, the statute does not apply, and we are left to the common law on the subject of perpetuities. The common-law rule is that an estate may

be limited to a life or lives in being and twenty-one years and the period of gestation afterwards. *Jordan* v. *Roach*, 32 Miss. 481, 611; 2 Bouvier's Law Dic., title "Perpetuity"; 2 Redf. on Wills, 568; 1 Fearne on Remainders, 471. By the will under consideration, the condition must be fulfilled at the moment of Daniel Willis's death, since the children living at his death took the instant he died, and the contingency of dying "without children" means by the statute (Hutch. Code p. 610, § 26) dying without children "living at the time of his death." All the candles were burning at the testator's death. He might have postponed the vesting of the remainder for twenty-one years and ten months after the last candle went out, but he has not done so. The moment the last candle is extinguished, the remainder in fee is bound in the nature of things to vest. 2 Redf. on Wills, 572, § 17. If, however, the bequest of the proceeds of sale of the residuum is personalty, which we think is the case, the statute of 1822 (Hutch. Code, p. 609, § 24), before cited, which is construed in *Carroll* v. *Renich*, 7 S. & M. 798, and *Kirby* v. *Calhoun*, 8 S. & M. 462, even if it prohibited limitations like those under consideration (which it does not, as we have seen), does not apply, for its provisions are confined to lands and slaves. There being then no prohibition against limitations of personal property in the statute, we are again left to the common-law rule. The doctrine that personal property may be limited over, by way of remainder, after a life-estate created at the same time, is now fully recognized and settled, both in England and the United States. Schouler on Personal Property, 166–168; 2 Kent Com. 352, 353; 1 Fearne on Remainders, 406, 471, 482, 483, 553; *Smith* v. *Bell*, 6 Peters, 68; *Westcott* v. *Cady*, 5 Johns. Ch. 334; *Logan* v. *Ladson*, 1 Desauss. 271; *Geiger* v. *Brown*, 4 M'Cord, 427; *Hubbard* v. *Selser*, 44 Miss. 705; *Gray* v. *Bridgeforth*, 33 Miss. 312; *Moffatt* v. *Strong*, 10 Johns. 12; *Langworthy* v. *Chadwick*, 13 Conn. 42; *Hudson* v. *Wadsworth*, 8 Conn. 348. The case last cited was a case of contingent remainder in money. The rule of perpetuities applies to personal property, which may be limited, by way of remainder, to the extent of any number of lives in being and twenty one years and ten months after. Schouler on Personal Property, 173; 1 Fearne on Remainders,

471; *Sheffield* v. *Lord Orrery*, 3 Atk. 282. The only exception to the foregoing rule is in the case of such chattels as wine, hay, corn and provisions, *quæ usu ipso consumuntur.* But this exception does not include money, — not even farming stock or wearing apparel. If, then, the construction of the testator's intention, as gathered from the will, is correct, the devise for life, with the remainder over, is good, and the appellants are entitled to a decree.

2. But the opposing counsel insist that the construction is not correct, and, in construing the will themselves, assume the position that the sentence — " To the said Daniel Willis during his life, and at his death to his child or children then living and the descendants of such child or children and their heirs for ever "— means a limitation (1), to Daniel Willis for his life ; (2), to his children for their lives ; and (3), to their descendants in fee. This, we admit, would be void as too remote. But that construction is forced, unnatural and contrary to the testator's language. " Child" or " children " and " descendants " mean the same remainder, which vests in possession at the same time, *i.e.*, at the death of Daniel Willis. It is the provision, usual in such bequests, that, in case a child should have died before Daniel Willis's death, such descendant should take as remainder-man its deceased parent's share of the legacy. The will shows the testator's intention to provide for the support and education of his children, and to start them fairly in life on their marriage or majority, and a distrust of their energy or capacity, with the purpose to guard his grandchildren against the improvidence of their parents. No absolute estate is devised to the children in the whole will, but it is always for life, and at their death to their child or children then living. The words " child or children," in the clause giving the remainder, might, if unqualified, be construed to exclude the grandchildren, and so the testator wisely put it beyond doubt, by using the language, " and at his death to his child or children then living, and the descendants of such child or children." The remainder in fee vests in the descendants and the children at Daniel Willis's death. Wherever a life-estate is devised, the will is superfluously accurate, and the change of phraseology here mani-

fests the design to give a different estate. The word " such," which was used inadvertently, is the only doubtful word in the clause. But if that means the descendants of the " child or children then living " at Daniel Willis's death, which we do not admit, the limitation is still good. " Descendants " does not, like " heirs," presuppose the death of the ancestor. The copulative conjunction in the limitation of the estate to vest at his death in his " children then living *and* the descendants " shows that they must be all living when the condition of his death is fulfilled. If this is not so, when does the fee-simple vest? The words are, " descendants of such child or children and their heirs for ever." What descendants take the fee, if not those living at his death? The limitation contingent upon Daniel Willis dying without " child or children or the descendants of such child or children," which immediately succeeds the clause under consideration, settles the construction, for it provides that, in such event, the estate shall go to his widow and his brothers and sisters. At common law the words, with the context, would not be construed to mean an indefinite failure of issue (2 Fearne on Remainders, 549), and by the statute (Hutch. Code, p. 610, § 26) the construction for which we contend is fixed. The will is carefully and accurately drawn, so that every sentence has its meaning and every contingency is considered and provided for. The intention of the testator, as gathered from its language, .which is the pole-star of construction, is manifestly (1) that the widow should be comfortably supported during her life ; (2) that the estate should be kept together, and the children supported and educated out of it until they came of age or married ; (3) that each child, when it became of age or married, was to have a fair advancement made to it, cautiously providing for the children of such child by limiting the gift to the child to a life-estate, with remainder in fee to the children; (4) that if a child died unmarried, during the life and widowhood of the widow, it was then dropped from the calculation ; (5) if a child, becoming entitled to a share in the proceeds of sale of the residuum, died before actually receiving it, to prevent a lapse, it was to go to the brothers and sisters named. Such,

we submit, is the fairly expressed intention of the testator. The sequel of this litigation may show that the testator, though exercising what might have been then considered extraordinary caution, " builded wiser than he knew," and that his thoughtfulness has saved his grandchildren from penury.

*E. H. Bristow,* on the same side, made an oral argument.

*Reuben Davis,* for the appellee, argued orally and in writing.

The devise to Daniel Willis during his life, and, at his death, to his child or children then living and the descendants of such child or children and their heirs, vests in the first taker a fee-simple estate, and the rest of the clause is void. But if it creates an estate tail, or conditional fee, the first taker has a fee-simple, by virtue of the statute. It is not good as an executory devise. The estate really created, however, is a conditional fee, or an estate-tail, which is an inheritance restricted to lineal heirs. The words " dying without issue or children," coupled with a limitation over on that event, have always been held to create an estate-tail in the first donee. 1 Greenl. Cruise, 81 ; 3 Greenl. Cruise, 250 ; *Jordan* v. *Roach,* 32 Miss. 481. Where the limitation over is to collateral heirs, as in this case, the intention is regarded as so manifest as to exclude all doubt. 2 Preston on Estates, 504 ; 3 Greenl. Cruise, 256 ; *Nottingham* v. *Jennings,* 1 Ld. Raym. 568 ; 1 Fearne on Remainders, 166 ; 1 Jarman on Wills, 237. The reason is, that, although the word " heirs" is used, the subsequent language shows that " heirs of the body " were meant. In *Hampton* v. *Rather,* 30 Miss. 193, it was held that the terms of the instrument in that case would have created an estate in fee-tail in real estate, and consequently that it conveyed the whole interest in personal property. The result is accomplished by the united action of the statute and the rule in Shelley's case. That rule has not been repealed, but is applied in aid of the object contemplated by the statute. If not good as an estate-tail, the limitation is void for perpetuity. It is equally in accordance with the common law and the statute that the result of an attempt to tie up property, real or personal, in this manner, is to vest the whole interest in the first donee. The law looks to depriving the owner of control of his property within a limited time after his death. While in the cases of *Carroll* v. *Renich,* 7 S. & M. 798; *Kirby* v.

*Calhoun,* 8 S. & M. 462 ; *Rucker* v. *Lambdin,* 12 S. & M. 230, executory devises of both real and personal property are recognized as valid, it has not been held that they could exceed the limits prescribed in the proviso to sect. 24 of the Act of 1822. It is urged that the conditional limitation which follows the devise to the children and their descendants and the heirs of the latter, giving the property to the brothers and sisters of Daniel Willis, brings the entire bequest within the statute. The position is fallacious. A life-estate being devised, with a limitation over to the heirs of the donee's body, under the rule in Shelley's case, the estate of the first taker was converted into a fee-tail. This, by the statute, became a fee-simple estate; and the conditional limitation was inoperative. Or, if the limitation to the child or children of Daniel Willis living at his death and their descendants and their heirs for ever, is void, Daniel Willis took an estate in fee-simple, and the result is the same. In either case, the appellants have no interest in the property, but the appellee is owner by virtue of the conveyance from Daniel Willis.

*Baxter McFarland,* on the same side.

1. The bequest is of the proceeds of the land which has not been sold. But, under the will and the circumstances, the land will doubtless be treated as personalty, and the rights of the parties determined as if the contest was actually over the proceeds. Story Eq. Jur. §§ 790 *et seq.,* 1212 *et seq.* ; 1 Jarman on Wills, ch. xx. For fear, however, that the court may think otherwise, some observations will be offered from both points of view. The act of 1822 (Hutch. Code, p. 609, § 24) converts estates in fee-tail, thereafter created in land, or slaves, into estates in fee-simple, allowing, however, a conveyance or devise of lands to a succession of donees then living and the heir or heirs of the body of the remainder-man, and in default thereof, to the right heirs of the donor in fee-simple. The author of this will was evidently skilled and learned, and able in apt words to say what he meant, and he must therefore be taken to have meant what he said. It is not a will in which the court can look beyond the language to ascertain the intention. There is no obscurity. The "pole-star" is clear.

And the inherent force of the language will not be modified by construction. The precise words used are these : " and at his death to his child or children then living and the descendants of *such* child or children and their heirs for ever." Under the rule established in Hutch. Code, p. 610, § 26, the language can receive but one construction. The words " then living " were intended to qualify " child or children," and not " the descendants of such." The statute provides that, where there are no such express words, they shall be implied, unless the intention be otherwise plainly declared. The common-law rule was the reverse. In this case, the statutory rule cannot apply. The author of the will so accurately arranged the language, and placed the qualifying phrase, as to exclude the operation of the statute. Under the principle *expressio unius exclusio alterius*, it must be held that the application of the words " then living " to the words " child or children " excludes the right to supply them by intendment after " descendants."

2. The time within which the absolute estate in personalty shall vest is a life or lives in being, twenty-one years and the period of gestation. It is not sufficient that it may vest in that time. If it may not, the effect is the same as if it obviously cannot, and equally falls under the condemnation of the rule. 2 Bouvier's Law Dic., title " Perpetuity." If the limitation extends, or may extend, beyond the prescribed period, it is void. If the clause in question is construed according to the natural and grammatical meaning imported by the language, *i. e.*, that the devise is to such child or children of the respective donees as may be living at their death and to the descendants of those living children and their heirs for ever, to the exclusion of a child or children of said donees, who had died previous to the decease of the donee; then, under the principle against perpetuities, above referred to, the limitation is too remote, and is void. It penetrates the line of posterity indefinitely. " Descendants," as used, does not mean descendants of predeceased children, on the one hand, nor the living descendants of the " child or children " alive at the death of the donee, on the other, as contended by the counsel for the appellants. In other words, it does not mean

the descendants, whether of dead or living children, living at a single point of time, but denotes a class of persons to take from generation to generation. It has also the effect, as in *Jordan* v. *Roach*, 32 Miss. 481, of restricting the general words, "their heirs for ever," so as to mean the "issue," "lineal descendants," or "heirs of the body" of the "child or children," to whom the limitation first applies, viz., those living at the death of the donee. The word "heirs," as used in this sentence, is not descriptive of the estate devised to the "child or children then living" and the "descendants," — whether of the living or dead children, — but of the persons intended to take, and the phrase, "their heirs for ever," taken with the other words, denotes such heirs only as are "descendants" of the "child or children" referred to in the preceding part of the limitation. Forty years have worked many changes in ideas concerning property, and we must go back that far, and farther, in order to look at things from the standpoint of this testator, whose testamentary disposition indicates that he grew up in England or South Carolina, where entailments and preferences were quite common, even when indulging in them resulted in excluding grandchildren. The force of the old-time desire for self-perpetuation, manifested in and nourished by the wide-spread custom of sending property down the line of future generations, allowable almost everywhere until a recent period, was felt much more strongly here a half-century ago by the emigrants of that day than by the present generation, and it is curious to observe how little influence was oftentimes exerted upon testamentary dispositions of property by considerations of kinship. Pride, desire of self-commemoration, and kindred sentiments, rather than the natural affections, largely controlled such testaments, and are important factors when we depart from the language used in a will made in those days to seek the intention of the testator.

3. But suppose that the will is construed to refer to such child or children and descendants of dead children as were alive at the donee's death, all being regarded as constituting a class of remainder-men, to take jointly at that time, still consequences result very different from those contended for by counsel. That would bring the case within the prin-

ciple of the rule in Shelley's case, and Lafayette and Daniel Willis would take absolutely. By the conveyance of Daniel Willis, Lafayette would acquire the entire property absolutely. In brief, the rule in Shelley's case is stated to be, in any instrument, if a freehold is limited to the ancestor for life, and the inheritance to his heirs, either mediately or immediately, the first taker takes the whole estate ; if it be limited to his heirs he takes a fee-simple, if to the heirs of his body, he takes a fee-tail. 2 Bouvier's Law Dic., title " Shelley's Case " ; 4 Kent Com. 274 *et seq.* The rule prevails in this State as to personal property. *Powell* v. *Brandon,* 24 Miss. 343 ; *Hampton* v. *Rather,* 30 Miss. 193. By that construction all are embraced who would be included by the words " heirs of the body," or "issue " of the donee, and having the same effect, the same rule of law will be applied. It includes all who could entitle themselves as heirs of his body at his death, viz., all his living children and all the representatives of dead children, — all, therefore, who descended from the loins of the donee. The effect is as broad as that of the words " heirs of the body," or " issue," and converts the estate into a fee in the ancestor, there being as much reason for a conjunction of the life-estate and the fee here as in any other case. 4 Kent Com. 226, 227 ; *Stephenson* v. *Hagan,* 15 B. Mon. 282 ; *M'Nair* v. *Hawkins,* 4 Bibb, 390. It is submitted that one of two things was intended, *i. e.,* either that (1) Daniel Willis should take a life-estate, and (2), at his death, his children then living a life-estate, and (3) their descendants a fee-simple or fee-tail; or that the property was given to the child or children then living and their lineal descendants indefinitely. Either intent would destroy the asserted claims of the appellants.

*Murphy, Sykes & Bristow,* for the appellants, in reply.

If this will was drawn by a skilful and intelligent conveyancer, as opposing counsel insist and we contend, he would not have incorporated in it an illegal provision ; and we submit that he has not. Counsel contend that the intention of the limitation is expressly and plainly declared on the face of the will to refer to an indefinite failure of issue, but we fail to perceive such express declaration. Hutch. Code, p. 610, § 26,

plainly applies ; and even at common law it would not be so construed. 2 Fearne on Remainders, 549. As to the rule in Shelley's case, the word " descendants " is not a word of limitation, unless the intention is clear beyond doubt, to use it in that sense. 3 Greenl. Cruise, 216 ; 2 Wash. Real Prop. 560. Here it cannot mean " heirs of the body," because the words of inheritance are placed immediately after it. There is no such thing as the " heir " of the " heir of the body." The will shows that " descendants " is a word of purchase, and not of limitation ; in other words, that the "descendants" take as remainder-men. Without following the fanciful argument of opposing counsel, as to the testator's motives, it is enough that, entertaining the intentions which we have noticed in our former brief, he wisely and carefully provided for their being carried out.

GEORGE, C. J., delivered the opinion of the court.

On the 17th day of December, 1841, Augustine Willis made and published his last will and testament, and, dying in a few days thereafter, it was duly admitted to probate in January, 1842. In the second clause of his will he gave his wife a life-estate in all his property, charged, however, with the support and education of his four minor and unmarried children. By the third, fourth, fifth, and sixth clauses, he provided for advancements to be made to his said four minor children, as they respectively arrived at majority or married. Each one of these clauses contained the provision for one child, so that they were all in exactly the same words, except the name of the child for which that clause made provision. The ninth clause was residuary, and directed that upon the death or marriage of the widow his land should be sold, and the proceeds, with the other personalty should be divided among his then surviving children on the same conditions and limitations provided in the third, fourth, fifth, and sixth clauses. These limitations and conditions will be shown by the following quotation from the fifth clause, which made the provision for an advancement to his son Daniel ; viz., after providing for an advance of twenty-five hundred dollars, the will provides, " and I hereby devise the money or property to

be thus divided: to the said Daniel Willis during his life, and at his death to his child or children then living and the descendants of such child or children and their heirs for ever." This clause then proceeded to make a limitation over of the share of Daniel, in case he died without child or children, or the descendants of such. The ulterior limitees were the three remaining of the four minor children; viz., Sallie, Ada, and the appellee, Lafayette. The names of these limitees were changed in the other clauses before mentioned, so that whenever one of the four died without issue the other three were to take the remainder. A son, Augustine, was allowed also to take in remainder, under certain additional conditions, not necessary here to mention. The testator named in other parts of the will three other children, as having been fully provided for, and he directed that they should receive nothing from his estate. Augustine died in 1842, Ada in 1844, and Sallie in 1850, both of these last unmarried and minors. The widow of the testator died in December, 1865, without having married a second time. At her death Daniel and Lafayette alone survived of the beneficiaries in the will. The executors nominated in the will all refused to act, and administration on the estate, with the will annexed, was first granted to the widow and one Dyche, jointly. Dyche resigned, and a new grant of letters was made to the widow alone, who made a final settlement of her accounts in June, 1855. After the death of the widow, in September, 1866, Daniel and Lafayette, regarding themselves as the owners in fee of the lands devised by the will, and directed by it to be sold, made partition of the same, and immediately afterward Daniel, for a valuable consideration, sold and conveyed his share to the said Lafayette in fee-simple. Daniel died in 1867, leaving three children. In July, 1878, one of the appellants, Thomas R. Caldwell, was appointed administrator *de bonis non*, with the will annexed, of Augustine Willis, the testator; and he and the said three children of said Daniel exhibited this bill against Lafayette Willis, in which they seek to recover one half of the two special legacies given to Daniel and Lafayette, and the proceeds of the sale of one half of all the lands of which the testator died seised and possessed, together with the rents and profits of the same

from the death of Daniel in 1867. The bill also claims that the three children of Daniel Willis are entitled to a contingent interest in the other half of the estate, to become vested in them in case Lafayette shall die without issue ; and it is alleged that said Lafayette is fifty-eight years old, and is now without issue, and is likely to die without issue ; and this part of the bill seeks that some security be afforded by the court against the loss or destruction of it by said Lafayette, so that, in case he dies without issue, the share of the complainants, who are children of Daniel, may be forthcoming. The bill asks for a sale of the land, so that the will may be carried out. There was an answer to the bill, and the cause was tried on the bill and answer, and an agreement of the parties to the effect that the court should determine the rights of the parties under the will and decide no other question, leaving the other questions to be settled afterwards. The Chancellor dismissed the bill and the complainants appealed.

Under the view which we have taken, it is unnecessary to do more than decide upon the construction of the will, as to the estate devised in the third, fourth, fifth, and sixth clauses, which make special bequests to the four children therein named. The settlement of this question will also settle the rights of the complainants under the ninth or residuary clause, since the last clause adopts the before-mentioned clauses as to the nature of the estate given under it. We quote again the provision in the will of Augustine Willis, which we are called upon to construe, as follows : " I hereby devise the money and property to be thus divided : to the said Daniel Willis during his life, and at his death to his child or children then living and the descendants of such child or children and their heirs for ever." It is insisted by the appellants, the children of the said Daniel, that he took only a life-estate in the devise, with remainder to them in fee. On the other hand, it is insisted that the life-estate expressly given to Daniel has been enlarged to a fee, either by the operation of the rule in Shelley's case, or because the estate is attempted to be entailed, in violation of the rule against perpetuities. The difficulty about the construction arises from the use of the words " descendants of

such child or children," for it is conceded on both sides, if these words were erased from the will, so that the devise would be to D. for life, and, at his death, to his child or children then living and their heirs for ever, the devise would vest a life-estate in D., with remainder at his death to his children then living. There are but four possible meanings to the clause under consideration, so far as relates to the question as to who shall take after the death of D., and in what character, viz. : 1. That the child or children " then living," and the living descendants of such children, as may be then dead, will take, such descendants to take the share of their deceased parents ; 2. That the child or children (at the death of D.) living, and the descendants, then also living, of the living children, take as tenants in common, each descendant taking a full share with a living child ; 3. That the child or children of D., living at his death, and their descendants, will take, the descendants to take in succession to the children, and on the death of their respective parents. And, under this meaning, the descendants would take either as purchasers after the death of their parents, or as heirs of their said ancestor ; 4. That the child or children living at D.'s death, and their descendants generally and indefinitely, are to take as tenants in common. The appellants insist that the first meaning is the true one, and that, if they should be mistaken in that, then, at all events, the second meaning must be adopted.

There is nothing in the language of the will to authorize the adoption of the first possible meaning. The language is " to the child or children then living and the descendants of *such* child or children." The import of this is plain and clear, and there is no room for construction. The descendants referred to are the descendants of the children mentioned in the prior clause of the sentence, viz., children then living, *i.e.*, living at the death of D. The words " such child or children " plainly connect the last named children with the first. It is admitted that this is the grammatical meaning of the words, but it is insisted that this meaning arises from the improper and incautious use of the word " such." If there was any thing in the other parts of the will to show that the testator had a different intent from that expressed in this clause, we

might reject this or any other word which was inconsistent with the plain meaning of the testator, as thus shown from a consideration of the whole will. But we find no such different intent expressed. If we reject the word "such," we have no other ground for it than a conjecture based on a presumption that the testator intended to make a provision similar to the statute relating to the distribution of intestates' estates. It is clear, therefore, that the first possible meaning which might be attributed to the clause in question cannot be adopted. The second meaning will be discussed hereafter in connection with the fourth.

We proceed now to consider the third supposed meaning; viz., that the descendants take in succession "to the children then living," and either as their heirs or as purchasers. Suppose it is asserted that they take as "heirs," then the word " descendants " is wholly without force in the clause, since the word " heirs " is also used and expresses the exact idea which this supposition attaches to the word " descendants." This would be to obliterate this word entirely from the will, which we have seen cannot be done, unless a plain intent to do so appears from other parts of the will; and no such intent appears here. Take, then, the alternative meaning, possible under this supposition; viz., that the " descendants " take as purchasers; then the will must be construed as if it read thus: to D. for his life, and, at his death, to his children then (*i.e.*, at D.'s death) living, for their lives, and then to their descendants and their heirs forever. It is manifest that this construction, if adopted, would destroy the title set up by the complainants. The devise would be void, because it would be in violation of the rule against perpetuities, which requires the fee to vest within a life or lives in being at the testator's death, and twenty-one years after the expiration of such life, or twenty-one years after the expiration of the last surviving life if more than one be named in the will. The life of a child of D. must necessarily have been in being at D.'s death, for, if the child were then *en ventre sa mere*, it would, for all the purposes of this rule, be considered as in being at the time of the father's death. It is true that the descendants of the child of D. might all of them also be in existence at D.'s death, but it

is equally true that all or some of them might come into being afterwards; and in such case there would be added to a life in being, at the testator's death, another life commencing after his death, and whenever this is the case the rule against perpetuities is violated, and the limitation void. But we do not consider this the true construction of the will, because there is nothing in the will to show that the children of D. shall take only a life-estate, and nothing to show that the descendants shall take no interest during the lives of their ancestors, the children of D., but only in succession to them.

It has now been shown that neither the first nor third of the supposed possible meanings of the devise can be adopted; it remains, therefore, to inquire which of the two remaining senses is the true one. The difference between these two meanings is, that, in the second, the devise is construed to be at the death of D. to his child or children then living, and to the descendants of such children, also living, at the time of D.'s death; and in the fourth it is supposed that, not only "descendants" living at D.'s death are included in the devise, but also his descendants generally, whether living at the time of D.'s death or coming into being afterwards. The "descendant," who seeks to make out his claim under this clause, must be a descendant of a child living at D.'s death. There is no ambiguity or indefiniteness as to the party from whom the descendant is to issue, — the ancestor must be a child of D., living at D.'s death. Both sides concede this. The point at which the controversy arises is whether all of these descendants, or a part, are to take under the will, and, if a part only, then, which part? There is nothing in the will to suggest, nor does the argument suggest, a division of these descendants into classes, a part of whom shall take, and a part not, unless it be as to the time of the existence of the descendants, with reference to D.'s death. Divided with reference to this point of time, there can be but three possible classes of descendants, viz: 1. Those who died before D ; 2. Those *in esse* at the time of D.'s death ; 3. Those coming into being after D.'s death. There can be no other possible descendant of a child of D. It is manifestly impossible that the first class should have been intended, for they could not have taken;

they had ceased to exist when the devise was to take effect; and, besides, there is nothing in the will to indicate that provision was made for deceased descendants of children when there was none made for deceased children or their living issue.

As to the second class, viz., those descendants of a surviving child of D., who were *in esse* at the time of D.'s death, and none others, it is insisted, in support of the view that this class was meant, that the words " then living " should be read as if inserted after " descendants " in the clause under consideration. The will, under this construction, would read as if written thus: to D. " during his life, and at his death to his child or children then living and the descendants then living of such child or children and their heirs for ever." As written, the devise is: to D. " during his life, and at his death to his child or children *then living* and the descendants of such child or children and their heirs for ever." The testator expressly describes the children of D. who are to take at D.'s death, as those " then living," but omits to qualify the " descendants of such child or children " in the same way. Have we a right to say that the testator meant nothing by this change in phraseology, and to insert in his will words which, after being used to qualify the immediate descendants of D., his children, are omitted, as a qualification of his more remote descendants? We think not. The will bears internal evidence of having been prepared with care, under professional advice. The phrase we have quoted appears *ipsissimis verbis* four times in the will. It does not therefore owe its peculiar structure to haste or inadvertence. On four several occasions he qualifies the children of D. by the words " then living," and in the same sentences, and in immediate juxtaposition, with such use of these words as applied to children, he omits them in connection with descendants. We are bound, therefore, to hold that the appropriate and unambiguous language, thus deliberately adopted and repeated, expresses the meaning and intent of the testator. He must be held to have meant what he has thus plainly and deliberately expressed.

But it is argued that the 26th section of the Act of 1822, Hutch. Code, p. 610, applies to this clause of the will, and has

the effect to insert " then living " after the word " descendants." This section, so far as it relates to this question, is as follows: "Every contingent limitation in any . . . will, made to depend upon the dying of any person without . . . children, or offspring, or descendant, or other relative, shall be held and interpreted a limitation to take effect when such person shall die, not having such . . . child, or offspring, or descendant, or other relative (as the case may be), living at the time of his death, or born to him within ten months thereafter, unless the intention of such limitation be otherwise expressly and as plainly declared on the face of the . . . will creating it." We think that, if the statute applies, the position of the appellee, that the contrary intention mentioned in it is plainly and expressly declared on the face of the will, is well founded. For it is impossible to conceive that the testator intended, for the reasons before given, that the words " then living " should be read after " descendants." And if the testator did not intend the words to be inserted, it must be held that he meant to have his language construed without the qualification implied in them. But we do not think that the statute applies to the clause under consideration. It applies only to contingent limitations made to depend upon a person dying *without* children or descendants, &c. The clause in question contains no limitation on the death of a person dying without children or descendants. On the contrary, the clause proceeds on the idea that there will be children or descendants of D., and makes a disposition of the estate to such children and descendants ; and the question here is, not as to the validity of a limitation over to other persons, dependent upon the death of D. without children or descendants, but it relates solely to the validity of the limitation to these children and descendants of D., supposing them to have been born and not to have died. It thus appears that the second class of descendants, viz., those only living at the death of D., was not meant by the testator.

We think it equally evident that the third class, or those only who were born after D.'s death, was not meant as the only descendants entitled to take. If they alone were meant by the testator, then existing issue would be excluded,

when no intent to exclude them, as a *part* of the descendants, is manifested in the will. This construction would make the testator draw a distinction in the distribution of his bounty against actual descendants in favor of future possible descendants, both classes being related to him and his child D. in the same degree. Such a construction will not be adopted unless there be plain words requiring it, and there are none such here; on the contrary, there is a strong implication against it.

It being thus shown that the three possible classes of descendants of the children of D. taken separately were not intended, we must construct a fourth class, composed of some or all the three classes before mentioned. For the manifest reasons above stated, in rejecting the first class, as those alone meant in the will, we exclude it from this fourth class. The first class being eliminated, we have this fourth class composed jointly of those who were comprised in the second and third classes, viz., the descendants of the children of D. living at his death, and also those who might come into being afterwards. This class being the only possible class, not already ascertained to be not-included in the bequest, and being also fairly embraced in the language of the will, must be adopted as comprising those descendants who were intended by the testator to take after D.'s death. And this being the class of " descendants " intended, then, also, it is established that the fourth possible meaning of the whole clause of the will under consideration is the true and correct construction of that instrument. Restating that meaning, we find that the devise is to D. during his life, and, at his death, to his child or children then living and the descendants of such child or children, generally and indefinitely, as tenants in common.

Is such a bequest good? is the next question. Except when the limitation is by way of contingent remainder, which may be cut off by the alienation of the particular tenant (which liability to be defeated in this way is the reason for the exception), a limitation of an estate in realty or personalty will be void, if by the terms of the instrument creating it the fee may not vest within a life or lives in being at the death of the testator, and twenty-one years and the usual period of gestation .

thereafter. This rule applies as well to executory devises, when an estate in fee is given, and a limitation over, devised to another upon the happening of some contingency which will have the effect to cut short the estate devised to the first taker, and at the same time to vest it in an ulterior limitee ; as also to provisions like the present, where an attempt is made to tie up the inheritance or absolute interest in a direct bequest, and for a longer period than allowed by the above-mentioned rule. It is manifest that the devise or bequest in question, so far as it relates to the descendants of the child or children of Daniel Willis, who were not, or might not be, born at the death of said Daniel, or within ten months (the usual period of gestation) thereafter, is void; for, if such descendant could take under the will, his interest would not vest within the period prescribed by the rule, for we have the life of Daniel, which was in being when testator died, and also an indefinite period thereafter, in which the fee is to vest. The limitation being to the descendants of the children of D. indefinitely, it might happen that a person answering the description of such descendant, and therefore entitled to take under the terms of the will, might not come into being until after the period fixed by the rule above stated. For it must be borne in mind that, by the terms of the rule, the bequest will be void, if by the intent of the will the absolute estate may not vest within the prescribed limits, although as the events actually turn out, every person, who is entitled to take, comes into being within the time fixed by the rule.

It thus appearing that the limitation is void as to some of the persons comprised in the class to which it is made, it results, by a well-settled rule, that it is void as to the whole class. The courts will not undertake to separate the interests of those who might take from those who cannot, for the manifest reason that no such attempt could be successful until the period should come when it would be certainly known that no other person could come into existence who would be entitled to take under the will. Until that time, it could not be known into how many shares the bequest should be divided, and, as a consequence, till then those entitled to take, if they had not been comprised in a class with the

others, could take no vested interest. On this subject Sir William Grant in *Leake* v. *Robinson*, 2 Meriv. 363, 390, said : " The bequests in question are not made to individuals, but to classes, and what I have to determine is whether the class can take.   I must make a new will for the testator, if I split into portions his general bequest to the class, and say that, because the rule of law forbids his intention from operating in favor of the whole class, I will make his bequests what he never intended them to be ; viz., a series of particular legacies to particular individuals, or, what he had as little in his contemplation, distinct bequests in each instance to different classes, namely, to grandchildren living at his death, and to grandchildren born after his death." See 1 Jarman on Wills (3d Am. ed.), ch. ix. § ii.

The limitation being void, because it violates the rule against perpetuities, as to personalty then (and both sides concede that the direction to sell the land makes it personalty), the rule is that the first taker gets an absolute estate.   In *Harris* v. *McLaran*, 30 Miss. 533, 570, Smith, C. J., said the estate of the first taker was absolute " in those cases in which an intention to dispose of the whole interest is apparent, and where also conditional limitations were engrafted upon interests in the first takers, which, in the absence of such conditional limitations, would be held to be absolute interests."   The rule is laid down in the same way in 1 Fearne on Remainders, 488.   The intent to dispose of the whole interest is perfectly manifest in this case. It thus appears that Daniel took an absolute interest in the property given in the will, and, being absolute owner, he had a right to dispose of it to his brother, the appellee.   The bill was therefore properly dismissed, and the decree is

*Affirmed.*