### No. 119.—Succession of Mahala Sprowl.

An executor is not permitted to make any charges against the estate he administers for services rendered, other than the two and a half per cent. commissions allowed him by law on the amount of the inventory.

An executor, having received the funds of the estate he administers and afterward disposed of them for notes of the so-called Confederate States will be held liable to the heirs for the amount thus received.

APPEAL from the Parish Court of the Parish of Natchitoches. *Lewis, J. Pierson & Levy,* for executor, appellee. *A. Lemee,* attorney for absent heirs, appellant.

LUDELING, C. J. Daniel Brown, the executor of the last will of Mahala Sprowl, filed an account of his administration on the sixth of February, 1866.

An opposition thereto was filed by the attorney for the absent heirs, praying that the following items of the account be disallowed, to wit: Two hundred and ninety-six dollars due the executor for ginning and pressing the cotton in 1860, five hundred dollars due the executor for superintending the plantation in 1859, and sixteen thousand nine hundred and ninety-seven dollars and fifty-two cents claimed as a credit for Confederate notes collected by the executor. The judge *a quo* sustained the opposition made to the item for five hundred dollars, and dismissed it as to the other two items, and the opponent has appealed.

We think the charge for ginning and pressing the cotton should not be allowed. A family meeting, convoked on the ninth day of November, 1859, recommended the sale of the plantation, mules, slaves, etc., and the sale was not made until the fifth day of January, 1860. No reason is shown why the cotton was not ginned and pressed before the sale. It was the duty of the executor to have caused this to be done, and we will not permit him to take advantage of his laches to enrich himself.

The charge made by the executor for *superintending* the plantation is not a proper charge. The commissions allowed him by law are intended to compensate him for his superintendence and care of the property of the estate. C. C. article 1676; 1 R. 400. The facts in the case of the succession of Isaac Pipkin, reported in 7 An. p. 617, may have justified the court in coming to the conclusion which they did, but we think the ruling in the case of Baldin's executors *v.* Carleton more salutary and in consonance with the Civil Code, which declares that the executor "shall be entitled, *for his trouble and care,* to a commission of two and a half per cent. on the whole amount of the estimate of the inventory," etc.

We cannot allow the executor the credit for sixteen thousand nine hundred and ninety-seven dollars and fifty-two cents claimed by him to be for balance of Confederate notes on hand at the surrender. There is no evidence in the record to show that the notes of W. W. Brown, given for slaves, were paid in Confederate notes. The only evidence offered to prove this fact is the testimony of the executor himself; and his testimony shows that W. W. Brown settled these notes in February, 1862, by transferring to the executor sufficient funds, which he had in the hands of Payne, Huntington & Co. And the same testimony satisfies us that the funds in the hands of Payne, Huntington & Co., belonging to W. W. Brown in February, 1862, consisted of lawful money, and not Confederate notes. Having collected the slave notes he must account for them. "He is bound to restore to his principal whatever he has received by virtue of his procuration, even should he have received it unduly." C. C. 2974.

It is contended by the executor that he acted as a prudent man, and that he believed the settlement with Payne, Huntington & Co. a good one, and that therefore he should be released from responsibility. The evidence does not satisfy us that the executor administered the property prudently or faithfully. Whatever may have been his opinion or the opinions of his neighbors relative to the eventual success of the Confederate States in insurrection, the executor was not authorized to speculate in stocks of the said States with funds belonging to the estate administered by him. In this case the executor's duties were plainly indicated by his mandate, the testament of Mahala Sprowl. 3 An. 468. "If a man undertakes an office of kindness he must discharge the duty

69

faithfully and prudently, otherwise he is responsible for the consequences." 10 M. 708; Fitz *v.* Richard, 20 An. 549, and succession J. W. Wilder, 21 An. The evidence shows that the notes of Mrs. Manning for three hundred dollars, given for a slave, were collected in Confederate notes, and for this sum the executor would not be responsible. But having used it in the payment of Confederate taxes, which are not opposed, he is not entitled to any other credit for it. We do not consider that the letters of Mrs. V. G. Sprowl, one of the legatees of the testatrix, ratify the acts of the executor in any manner, even if she had the power to do so.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be avoided and reversed; that the opposition of the attorney of absent heirs be sustained, and that there be judgment against Daniel Brown, executor of the last will of Mahala Sprowl, and in favor of the heirs and legatees of Mahala Sprowl for the sum of seventeen thousand seven hundred and ninety-three dollars and fifty-two cents, with five per cent. per annum interest thereon from the sixth February, 1866, till paid, and the costs of this appeal. It is further ordered that in other respects the account be homologated.

Rehearing refused.