## ALBERT et al. v. SANFORD et al., Appellants.

### Division One, December 22, 1906.

1. **WILL: Trusteeship: Power of Trustees: Distribution: Interests of Heirs' Children.** When the will was made the State was in the throes of the Civil War, the estate was large but unproductive and of small present value, the debts far exceeded the personal estate, and the family consisted of a wife, two sons, one of whom is the defendant, the other then in Australia, and two daughters, one married and the other a widow with children. The will gave the entire estate to the widow and the son who is the defendant, in trust "for themselves" and "the other three heirs," with full power to sell any or all the estate on any terms deemed suitable, "for the payment of debts or distribution," and "to make distribution among my heirs as to them may appear best and to distribute to those of my said heirs who are most in want, in the same manner as I could do were I living." After the available personal estate was exhausted the lands were sold by order of the probate court, were bought in by a member of the family for $800, and reconveyed to defendant as trustee. Defendant borrowed money from time to time to pay debts, holding the estate together, and in 1882 made final settlement as executor showing $140.29 in his hands due the estate, and in 1890 subdivided the lands and sold them for $8,978. *Held*, that the children of said "heirs" are entitled to share in the distribution of the proceeds of the estate, yet the testator intended that his trustee would come to the relief of any one of his children who needed help at any time as the testator could have done had he been living, and that fact should be held in view in stating the account.

2. ————: ————: ————: **Allowances for Services Performed.** The trustee in this suit, which is one to require him to account for the sum obtained for the sale of the land devised to him by the will as trustee and for the balance in his hands at the time of his final settlement as executor, cannot recover for personal services rendered by him on the farm in maintaining his mother

Albert v. Sanford.

and his sister and her children before his final settlement as executor, as that service does not relate to a part of the trust estate or its product, and he is not being charged with the products of the farm during the period covered by the service.

3. ——: ——: ——: **Maintaining Mother.** Where under the broad powers of the will the maintenance of the widow is made the duty of the executor, he is entitled, when sued for the proceeds of the estate as trustee, to a reasonable allowance for maintaining her at his house.

4. ——: ——: ——: **Advancement to Married Woman: Equity.** Where the trustee is being sued to account to the other heirs for the products of the trust estate, whether or not one of them, being a married woman to whom he advanced money to save her home, had authority to bind her property by contract, will not be considered; but the item will be disposed of according to the rule that those who ask equity must do equity. Besides, in this case the authority of the trustee to protect his said sister's home is found in the large provisions of the will.

5. ——: ——: ——: **Attorney's Fees.** It is *held* in this case, where the defendant showed unusual fidelity in the management of the trust estate, and where he had been advised by counsel that plaintiffs had no interest in the estate and that question is a close one, that he ought to have been allowed an attorney's fee, in addition to compensation for his services.

6. ——: ——: ——: **Interest.** In the settlement of a trustee's account in a court of equity, whether or not he should be charged with interest depends on the circumstances. He will be charged with interest only when the circumstances render it right and just to do so. And where the trustee interpreted the will to give the estate to him for the benefit of himself, his mother and sisters, and not for the benefit of their children, and those children sue for the proceeds of the sales of the lands, which were made along through a period of fourteen years, and they allowed a period of eighteen years to pass after his final settlement as executor and of ten years after he began to sell the lands, before they claimed any interest therein, he will not be charged with interest, although he used the money derived from the sales.

Appeal from Bollinger Circuit Court.—*Hon. Robert A. Anthony,* Judge.

Reversed and judgment entered here.

*Bond, Marshall & Bond* and *Wm. H. & Davis Biggs* for appellants.

(1) The heirs do not take a vested interest under the will. They as a class take an executory devise, with power in the trustees to appoint, which of the heirs shall have the property, and the estate in the heirs could not vest until the appointment was made. 1 Sudg. Pow., chap. 2, sec. VI. 2, 106; 2 Idem., chap. 10, sec. VI. 2, 158; 4 Kent's Com., 316; 2 Hill Real Prop., 557; 1 Sudg. Pow., ch. 7, sec. V., 538; 1 Jarm. Wills, 762; 1 Rop. on Leg., 337; 2 Sudg. Pow., 23, 260; Harding v. Glyn, 1 Atk. 469; Penn v. Lord Baltimore, 3 Ves. 198; Pope v. Whitecombs, 3 Merivale Eng. Ch. Rep. 689; Duke of Marlborough v. Godolphin, 2 Ves. Sr. 78; Hill on Trusts, 493; Boyle v. Bishop of Petersborough, 1 Ves. Jr. 299; McGhie v. McGhie, 2 Mad. Ch. 533; Maddison v. Andrews, 1 Ves. Sr. 57; Ford v. Rawlins, 1 Sim. & Stu. 328; Feynham v. Webb, 2 Ves. Sr. 208; Walsh v. Wallinger, 2 Russ. & M. 81; Needham v. Smith, 4 Rus. 318; Bruce v. Denison, 6 Ves. 391; Daniels v. Davison, 16 Ves. 256; Adams v. Beekman, 1 Paige Ch. 632; Drake v. Peel, 3 Edw. Ch. 251; 22 Am. and Eng. Ency. Law (2 Ed.), 1091. (2) The power of appointment being in the trustees to be exercised in favor of those of the children who in their judgment were most in want of it, authorized the appointment of the estate to the surviving members of the class, to-wit, Linus Sanford, or to him and such others of the class as fulfilled the requirements of the will, and this power was personal and discretionary and could not be controlled by the courts, except for fraud, which is not even charged here. 22 Am. and Eng. Ency. Law (2 Ed.), 1133, 1137, 1138; Wood v. Wood, L. R. 10 Eq. 220; St. John v. Gibson, 12 Jur. 373; Cambridge v. Rous, 23 Beav. 574; King v. Warren, 32 Beav. 111; In re Pattison, 5 Manitoba 274;

Higginson v. Keer, 30 Ont. 62; Walls v. Campbell, 2 Gill. 112; Hicks v. Ward, 107 N. C. 392; In re Linzee, 23 Beav. 241; Beck's Appeal, 116 Pa. St. 547; Manning v. Screven, 56 S. C. 78; Sutton v. Southern, 5 L. J. Ch. 185; New v. Potts, 55 Ga. 420; Irvin v. Farmer, 19 Ves. Jr. 86; Holloway v. Clarkson, 2 Hare 521; 4 Kent, 345; 2 Sudg. Pow. 253-256; 1 Rop. Leg., 68; 2 Harm's Wills, 70. The act of the surviving trustee in retaining to his own use the fund and in claiming the right to do so, was tantamount to an appointment to himself as the only surviving member of the class, and was a good and sufficient exercise of the power. Warner v. Ins. Co., 109 U. S. 357; Lane v. Lane, 64 L. A. R. 849, and especially note p. 850. (3) The rules of law applicable to vested or contingent remainders have no application to this case, for this was an executory devise of an indeterminate interest, to members of a class to be selected by the trustees. 2 Minor's Inst., p. 331, 332, 337; Fearne's Rem., 3 N. (C.) 9, 216; 2 Bl. Com., 164, 169 N. 10; 24 Am. and Eng. Ency. Law (2 Ed.), 389. (4) Even if the heirs took a vested interest, that interest was subject to divestiture by the exercise of the power of appointment in the donees. Thorington v. Hall, 111 Ala. 323; Carson v. Carson, 62 N. C. 57; Smith v. Hardesty, 88 Md. 387; Meyers v. Safe Deposit Co., 73 Md. 423. (5) The interest of the children under the will is in the nature of an executory devise and not a vested interest. 2 Minor's Inst., 374. The interest of each of the children depended upon the exercise of the power of appointment in the donees, and that power was limited by the consideration of the wants of the children respectively, and involved a personal discretion which it is still possible for the donees of the power to exercise, and is therefore beyond the power of the courts so long as the donees act *bona fides.* Hazel v. Hagan, 47 Mo. 281; Hill on Trustees, 488, 493; Pink v. DeThusey, 2 Mad. 157; French v. Davidson, 3 Mad. 396; 2 Lewin on Trustees, marg. page 613; 2

Albert v. Sanford.

Perry on Trusts (4 Ed.), sec. 508; 1 Jarm. Wills (6 Ed.), marg. page 369; Flint on Trusts & Trustees, sec. 214; Raikes v. Ward, 1 Hare 445; 2 Sudg. Pow., marg. page 253; Kennerly v. Kennerly, 16 Jur. 649; Salter v. Powell, 15 S. & R. (Pa.) 188; Horwitz v. Norris, 49 Pa. St. 218; Brown v. Higgs, 5 Ves. 505.    (6) Collier Will Case, 40 Mo. 289, considered. 1. This case was improperly decided on the facts in judgment and the opinion is wholly unsupported by the authorities cited.   2. The conclusions reached are in direct conflict with the express terms of the will.   3. The conclusion that the death of some of the principals of the class takes away from the donees of the power the right to make a difference among the children as to the quantum of interest they were to take, is unsupported by any precedents in the law, and in conflict with the provisions of the will.   4.  The conclusions that the power of the trustees was limited so as to vary the character or modify the disposition by the child of the part assigned to him, was in direct conflict with the provisions of the will that the shares or portions set apart to the children should be held by them in their own several rights, under the full and perfect legal title, to them and to their heirs, executors, administrators and assigns forever.   But, even if the Collier Will case was properly decided, it is inapplicable to the case at bar.   1. Because the Collier will expressed a desire that the children should share equally in the estate, except under certain contingencies; whereas, the Sanford will contained no such expression of desire and no such limitations upon the discretion of the trustees, but on the contrary left the share each child must have to·be determined by the trustees upon the consideration of which child was most in want and gave the trustees as much power in that regard as the testator would have had if living.   2. This court has clearly declared in Jarboe v. Hey, 122 Mo. l. c. 350, that it would not follow the Collier Will case except where a vested estate was conferred upon the·

children, and clearly intimated a doubt as to the correctness of the decision in that case. (7) The trial court should have allowed defendant's claim of $2,700 for the support of the widow and Mrs. Hunt and her four children, and should have charged the same against their interest in the estate. Martin v. Campbell, 35 Ark. 137; Hinson v. Williamson, 74 Ala. 180. (8) The circuit court should have allowed the one thousand dollars paid by defendant to extinguish the judgment against John Albert, for that payment was at the request of Mrs. Albert, one of the children, and saved to her a home of the value of at least three thousand dollars which she and her children have since enjoyed, and should have charged that amount against her share of the estate. The circuit court was inconsistent in allowing the $374 advanced by defendant to Phil Hunt, Margaret Rowe and Teresa Albert, and in refusing to allow this one thousand dollars. There is no difference in principle between the two. (9) The circuit court erred in charging the defendant with interest. Courts exercise equitable control in such matters and only charge interest when the circumstances of the case require it. In re Davis, 62 Mo. 450; Camp v. Camp, 74 Mo. 192; Cruce v. Cruce, 81 Mo. 676; Madden v. Madden, 27 Mo. 544; Glyce v. Anderson, 49 Mo. 37; Booker v. Armstrong, 93 Mo. 49; Meyers v. Meyers, 98 Mo. 263; 28 Am. & Eng. Ency. of Law (2 Ed.), 1078; 11 Am. and Eng. Ency. Law (2 Ed.), 1211. The burden is upon those claiming interest to show that the circumstances are such as in good conscience demand it. Wall v. Walker, 37 Cal. 424. Interest is not chargeable as a matter of course and the executor or trustee may show cause against it. Wither's Appeal, 16 Pa. St. 151; Colt v. Colt, 33 Cal. 279. There is no reported case wherein interest has been charged against one who had an interest in the fund and who claimed the sole right to the fund, although the claim was a mistaken one. The other heirs are estopped by their laches from

claiming interest in this case.     (10) Defendant is entitled to reasonable attorney's fees.     Section 223, Revised Statutes 1899, expressly allows such fees.     In re Estate of Meeker, 45 Mo. App. 186; Jacobs v. Jacobs, 99 Mo. 427; Scudder v. Ames, 142 Mo. 232.

*Albert C. Davis* for respondents.

(1)   The widow, Mary, and the children of Henry Sanford each took a vested interest under the will. Collier's Will, 40 Mo. 287; Bull v. Bull, 8 Conn. 47; Chew v. Keller, 100 Mo. 368; Tindall v. Tindall, 167 Mo. 227; O'Day v. Meadows, 194 Mo. 618; Longmore v. Broom, 7 Ves. Jr. 124; Brown v. Higgs, 8 Ves. Jr. 561; Pierson v. Garnet, 2 Bro. C. C. 226; Harding v. Glynn, 1 Atk. 469; Malin v. Keighley, 2 Ves. Jr. 335; Paul v. Compton, 8 Ves. Jr. 380; Parsons v. Baker, 18 Ves. Jr. 476.     (2)   Linus Sanford, the surviving child of and donee of the power, no longer has the power of appointment.     22 Am. and Eng. Ency. Law (2 Ed.), 1134-1135.     (a) All the children, except Linus Sanford and the widow of Henry Sanford, died before the execution of the power.   (b) The will particularly gives the names of the appointees, viz.:   "To Mary Sanford, my wife, and Linus Sanford, my son, . . . in trust for themselves as heirs of mine, and the other three heirs, namely, my son Pearl, my daughters Rowena Hunt and Theresa Albert."     And this is not a gift to a class, but to individuals.   30 Am. and Eng. Ency. Law (2 Ed.), 718; 6 Id. 108.   (c) There are none of the appointees alive except Linus, the donee of the power, and he can no longer distribute to the dead nor discriminate between the living and the dead.   Collier's Will, 40 Mo. 327. . (3) A given power of appointment by will to a class, without limitation over in default of execution of the power, a general intention that the class shall take, and also a particular intention in favor of individuals of the class to be selected by the donee of the power, intention fail-

ing by reason on non-execution of the power, there is a gift by implication to the entire class which a court of equity will enforce by decreeing an equal distribution. 22 Am. and Eng. Ency. Law (2 Ed.), 1144 (7), 1145b. (4) Linus Sanford did not do any act before or since the death of his co-heirs or by retaining the fund appoint himself to the fund. On the contrary, he distributed to some of the plaintiffs as late as October, 1889, or October, 1899. This rebuts the idea of appointing himself to the fund, and is a construction of the will by him. 30 Am. and Eng. Ency. Law (2 Ed.), 673. (5) It is no longer necessary in either will or deed to support a vested remainder by an immediate present or particular estate. O'Day v. Meadows, 194 Mo. 621. (6) Defendant should not be allowed his claim of $2,700 for supporting his mother and sister from May, 1861, to January, 1865, because the evidence does not show that he supported them. On the contrary, the record shows that his mother and sister supported defendant. (7) Defendant should be allowed for the support of the widow from 1865 to 1885, just so much as the testimony shows the reasonable value of the same to be for the time defendant so supported the widow. The record shows that he did not support her even half of the time, and is barren of any testimony as to the value of what he did give her. (8) The circuit court did not err in refusing the allowance to defendant of $1,000 claimed to have been paid by him to extinguish the judgment against John Albert. (a) The interest vested in Teresa Albert in 1861 while she was a married woman. She was still a married woman at the time of the alleged request to buy the judgment. She could not thus charge her estate. (b) Under all the evidence and his own admissions, he did not extinguish the judgment. (c) Under his own admissions, he had a settlement with John Albert after he purchased the judgment. (d) Under all the facts and circumstances in evidence, no doubt the court did not believe the defendant when he

testified that Mrs. Albert requested him to pay the judgment. (9) The general rule is that trustees are liable for interest from the time of the receipt of the fund, in the absence of circumstances justifying their retaining them in possession. 28 Am. and Eng. Ency. Law, 1080; Bobb v. Bobb, 89 Mo. 421; 1 Perry on Trusts (2 Ed.), sec. 471; 3 Pomeroy's Eq. Jur. (3 Ed.), sec. 1058. (10) Defendant is not entitled to any fee for his attorneys. (a) Section 223, Revised Statutes 1899, does not apply, and if it did, the claim should be made to the probate court. (b) The claim made in the account is for legal services in stating the account, and in representing the trustee in resisting this action. (c) It was the duty of the trustee to keep fair, accurate, and full accounts of his dealings with the trust estate, to have such accounts always ready for inspection, and to render them promptly upon reasonable notice. 28 Am. and Eng. Ency. Law (2 Ed.), 1076 (2).

VALLIANT, J.—This is a suit in equity to call a trustee to account and to settle the trust estate.

Henry Sanford, father of defendant Linus Sanford and grandfather of the other parties, died testate in November, 1861, leaving an estate which at the time of his death was and for a long while thereafter remained insolvent, but which, under the administration of defendant Linus who jointly with his mother was an executor of his father's will, finally paid its debts and left a balance over for distribution. At the time of the death of the testator his estate consisted of what in the evidence is called a homestead in Cape Girardeau where he lived, a farm near by, and 2,366 acres of wild land; he also owned two slaves, some notes calling in the aggregate with interest for $2,578, and household furniture, etc. What the notes were worth the evidence does not show. The appraisement of the estate was lost when the court house was burned during the war, but in 1885 a new appraisement under order of the probate

court was made of the real estate and it amounted then to $2,385. Debts were proven and allowed by the probate court against the estate to the amount of $6,139.16.

In 1863 or 1864 the creditors were pressing for payment and there being then no available personal property, by order of the probate court, the land was put up at auction and sold, was bought in by a member of the family for $800 and reconveyed to the trustees hereinafter mentioned. Defendant Linus from time to time borrowed money to pay on the debts, holding the estate together, and so affairs went on until 1880, by which time he had paid all the debts against the estate, and in 1882 made a final settlement as executor in the probate court, in which settlement it was shown that there was a balance in his hands due the estate of $140.29, and real estate of the appraised value of $2,385.

In 1890 a railroad was built near the land which so enhanced its value that Linus subdivided and sold it for sums aggregating $8,978, which sums he received; this suit is to require him to account as trustee for that sum plus the $140.29 balance due on his final settlement in the probate court.

The foregoing is a very brief description of the character of the estate which is the subject of this suit; the rights of the parties in regard to it grow out of the will of the testator, Henry Sanford, under which they all claim and chiefly under the main clause in his will which we will presently copy.

The testator left surviving him, his widow Mary Sanford, his two sons, Linus, the defendant, and Pearl, and his two daughters, Rowena Hunt and Teresa Albert. Of these, Linus is the only one now living. The son Pearl died in Australia in 1862, leaving a widow and three children whose whereabouts are unknown and they are made parties defendant as the unknown heirs of Pearl Sanford, deceased; Rowena Hunt died in October, 1864, leaving two children who are plaintiffs in this

suit; Teresa Albert died in 1893, leaving six children who are also plaintiffs herein.    Mary Sanford, the widow of the testator, died in 1885.    Linus Sanford is called to account herein as the sole surviving trustee under the will, and his adversaries are the children and heirs of his deceased sisters.

The trial resulted in a decree for the plaintiffs in which Linus (whom we will hereinafter call the defendant because he is the only real defendant) is charged with the $140.29 balance due on his final settlement as executor with interest at six per cent per annum from August, 1885, and $8,978, the aggregate proceeds of sales of the land since that settlement, and interest at same rate on the proceeds of each sale from the date thereof, making in all $14,098.20; giving him a credit for certain expenditures, and refusing to give him credit for certain other expenditures for which he asked credit, and rendering judgment against him for a balance so struck of $8,303.04, to be distributed among the plaintiffs and the heirs of Pearl Sanford as in the decree specified.    From that decree the defendant has appealed and assigns for error, first, that it was error to have held him to account at the suit of these plaintiffs at all; second, that the court erred in the account by not giving him credit for certain items claimed by him and in charging him interest.

I.    Whether the plaintiffs have such an interest in the estate as entitles them to maintain this suit depends on what the will means.    There is one point on which counsel on both sides agree, that is, that in determining the rights of the parties under the will we must be controlled by what we find to have been the real intent of the testator, and that intent is to be discovered from the whole instrument, viewing the subject from the standpoint of the testator, that is, considering the condition of his estate, his family and the circumstances or conditions which surrounded him at the time he made the will.

The will bears date October 28, 1861; the State was then in the throes of the great civil war, the testator's estate was large in area, though then undeveloped, unproductive, of small present value, debts amounting to more than $6,000 hanging over it, the family the testator was leaving being his wife the mother of his children, one son the defendant Linus then about 22 years old present to take charge of the estate, the other son absent, two daughters, one a widow with four children dependent on him, the other a married woman living with her husband. How to hold the estate together until the debts could be paid and at the same time furnish the necessaries of life to the dependent family would be a difficult problem at any time, but in war times more difficult, yet that was the problem the father left to his son and widow to work out, and he gave it to them in these words: ''After my just debts are paid and the special bequests hereinafter named are discharged, I will, bequeath and devise all of my property of whatsoever nature, whether real, personal or mixed, to Mary Sanford my wife, and Linus Sanford, my son, who are also hereinafter appointed executors; and in case of the death of either of them, to the survivor, in trust for themselves, as heirs of mine, and the other three heirs namely, my son, Pearl, my daughters, Roena Hunt and Teresa Albert, giving them, the said Mary Sanford and Linus Sanford or survivor, full power and authority to make distribution of my property among my heirs, as to them may appear best, and to distribute to those of my said heirs who are the most in want, in the same manner as I could do, were I living. I will that my executors, or the survivor of them, and I do hereby authorize them, to sell and convey at public or private sale on such terms as they may deem suitable, all my personal or real estate, for the payment of debts or distribution, and in the case of such the sale of real estate, to make and execute deed or

deeds of conveyance as fully as I could do, were I living.''

Respondents construe that clause to mean that the widow and heirs named were given a vested equitable estate, with the legal title in the trustees named with the power to have made unequal distribution if they had seen fit to do so, but that as that power was not exercised until all the children of the testator named in the will, except Linus, had died it could not thereafter have been exercised and cannot be now.

Appellant's construction is that the will gave the estate to the trustees and the survivor of them absolutely, and with power of appointment to be exercised in their discretion; that the children of the testator other than Linus took nothing by the will but could have taken by appointment, if the power had been exercised in their favor, but no appointment having been made in their favor while they lived they acquired no estate that would descend to their heirs and therefore the plaintiffs have no interest in the trust estate.

The learned trial judge was of the opinion that the children of the testator by force of the will took a vested interest in the estate which when they died descended to their heirs respectively, that the power given by the will to the trustees to sell was for the payment of debts and distribution, that as the debts had all been paid when the final settlement was made in the probate court the sales of the land since then could only have been for the purpose of distribution, hence the plaintiffs were entitled to the accounting and distribution prayed.

We think the court's interpretation of the will was in the main correct, but we also think that there was a large power, as large as that of a proprietor of the property, running not only through the period of administration as executors but continuing also through the period of trusteeship, under which the defendant

in his discretion could devote any part of the estate or of the proceeds thereof to the wants or necessities of the beneficiaries or either of them. The testator made his will in the face of extraordinary conditions, well calculated to cause him to apprehend that his estate would not be adequate to save his wife and children from suffering unless the fullest power were given his trustees, in whose discretion was his only reliance. Therefore he gave them power to discriminate between his children "as to them may appear best, and to distribute to those of my said heirs who are most in want in the same manner as I could do, were I living." We cannot think that the testator meant to limit the power to discriminate to the condition of the testator's children at the time of his death, but, whilst it may be he had in mind in that connection only his children, not their children, yet he intended his trustees to come to the relief of any one of his children who needed help at any time as fully as the testator could have done if he were living. This thought must go with us in the statement of the account.

II. After the death of the testator the defendant with his mother and his sister Mrs. Hunt and her four children moved out to the farm and lived there for three years, that is, until January, 1865, and during that period they were supported or subsisted on the product of the farm. During that period Mrs. Hunt was the housekeeper and the defendant was the manager and chief laborer on the farm; he claims that he should be allowed credit on this account for the value of his services thus rendered in maintaining his mother and sister and her children, and he puts his figures for that service at $2,700.

Under the power given him by will, in so far as the rights of the widow and children of the testator are concerned, the defendant had authority to appropriate any portion of the trust estate or of its product to the sup-

port and maintenance of his mother and sister, if in his judgment they needed it more than the other beneficiaries, and in a suit in which he might be called to account for the part of the estate or its product so used he would sufficiently account for it by showing that it was so used. But the item now under discussion does not relate to a part of the trust estate or its product, but to the personal services of the defendant, his own labor as a farm hand. If he was being charged in this account with the products of the farm during the period covered by this item he could show that they were consumed by his mother and his sister and her children and that showing under the plenary power given him by the will would acquit him, but that is not the case. The court did not err in denying the defendant that item of credit.

III. Defendant claims credit for $3,000 for the expense of maintaining his mother from January, 1865, to August 23, 1885, the date of her death. To the extent that it is sustained by the evidence that is a legitimate credit to defendant. Whilst the maintenance of a testator's family is not ordinarily the duty of the executor, yet under this will it was his duty and privilege.

It satisfactorily appears from the evidence that the testator's widow lived with defendant and was supported by him from the time she returned from the farm in January, 1865, to the date of her death, August 23, 1885, except for a period of perhaps four years, 1874 to 1878, concerning which time the evidence is in confusion. The evidence is also satisfactory that $150 a year is a reasonable estimate of the costs of that maintenance. Deducting four years from the period claimed leaves sixteen and a half years proven, which at $150 a year render the item for which the defendant should have credit $2,475, but, on this account the court allowed him only $900. He should therefore have an additional credit of $1,575 on that item.

IV.   The evidence shows that November 16, 1880, the defendant at the request of Mrs. Albert paid $1,000 for the purchase of a judgment against her husband, which transaction resulted in material benefit to her and her family.

The ground on which the respondents resist the allowance of this item is that the interest of Mrs. Albert vested in her at the death of her father in November, 1861, when she was a married woman, and it being before the enactment of the Married Woman's statute it did not become her separate estate, and therefore, in 1880, when she requested the defendant to advance this money to save her home, she could not by contract bind her property.

We need not discuss the Married Woman's act or the power of Mrs. Albert to bind her property by contract; it is sufficient for the present purpose to say that this is a suit in equity in which the heirs of Mrs. Albert are asking a court of conscience to compel the defendant to render unto them what is right and just and if they ask equity they must show a disposition to do equity.

Besides, the authority to advance this money to protect one of the testator's daughters from what the trustee thought was a pending danger is to be found in the large discretionary power given the trustee by the will.

Defendant is entitled to credit for that item.

V.   The court refused to allow the trustee any sum for payment of his attorneys in this suit.

The record shows that the trustee was faithful in the management of the estate and exercised good business judgment in its preservation.   In fact, it is due alone to the fidelity and good judgment of the defendant that there was any estate left for distribution. When it came into his hands it was insolvent and but for his services it would have all gone under the sheriff's hammer.  The trial court recognized this fact and

allowed his as compensation for his own services the sum of $1,000, but by refusing to allow him anything as compensation for his legal counsel in this suit in effect compelled him to pay his counsel out of the sum allowed for his own labor.   The court put its refusal to allow this item on the ground that in this suit the defendant is denying the plaintiffs' right to any part of the estate and is claiming it all as his own.

The allowance of attorney's fees in a case of this kind is to a considerable extent within the discretion of the court; as a rule a reasonable allowance is made unless bad faith or culpable mismanagement appears. Here there is no suspicion of bad faith and, as already said, excellent management is shown.   The fact that the defendant was advised that under the terms of the will these plaintiffs had no interest in the estate and no right to call him to account should not be charged up against him under the head of bad faith.   If he was advised that such were his rights he had a right to ask the judgment of the court to that effect.   That it was a very doubtful question in the case is shown not only by the elaborate briefs of learned counsel on both sides, but by the very learned written opinion of the trial judge with which we have been favored and by which we have been persuaded.   But that stage of the cause once passed and the defendant ordered to produce an account of his trusteeship, it is then a matter in which the conflict is not necessarily restricted to the plaintiffs on the one side and this defendant on the other, but one in which the respective interests of the beneficiaries among themselves are to be considered, not only among those present, but also the far away heirs of the deceased brother.   The court ought to have allowed the defendant at least $500 for his attorney's fees.

VI.   The last controverted item is the interest charged against this trustee.

In the settlement of a trustee's account in a court of equity he is or is not charged with interest accord-

ing to the circumstances. There is no statute or arbitrary rule on the subject. When a court of equity charges the trustee with interest it is when and only when the circumstances of the case render it right and just to do so. [In re Davis, 62 Mo. 450; Camp v. Camp, 74 Mo. 192; Cruce v. Cruce, 81 Mo. 676; Bobb v. Bobb, 89 Mo. 411; Booker v. Armstrong, 93 Mo. 49; Myers v. Myers, 98 Mo. 262.]

In this case the various sales of real estate ran through a period from March, 1888, to February, 1902, and the trustee is charged with interest on each item at six per cent per annum from the date of the sale to date of decree, January 14, 1904.

We do not think the circumstances of this case justify the charging of the trustee with interest. The evidence shows that he did not receive any interest on it, and whilst it shows that he spent it for his own purposes and it is now all gone, yet he did so openly, believing it to be his own and under circumstances which show that the plaintiffs had notice of it. If the plaintiffs thought that they were entitled to a share in the proceeds of these sales they ought to have said so earlier. But they allowed a period of about 18 years to pass after the final settlement in the probate court and 10 years or more after defendant began selling this land before they gave any intimation to him that they claimed any interest under their grandfather's will. During all that time they seemed to acquiesce in that interpretation of the will on which defendant acted. They now say that these controverted items of credit claimed by the trustee are afterthoughts of his trumped up to meet the exigencies of this case, and very likely that is so, but the plaintiffs' case also bears evidence of being an afterthought; it would have appeared in a more favorable light if it had been brought to the attention of the court ten years or more ago or when defendant first began selling the land.

The judgment of $140.29 on final settlement in the

probate court would bear interest under the statute from the date of its rendition, but the record shows that since that date and before the filing of this suit the trustee paid out to some of the beneficiaries more than the amount of that balance; therefore, the interest on that sum should not run in this account.

Taking all the other items of the account as stated · by the court, about which there is no controversy, eliminating the items of interest on both sides, giving the defendant credit for $1,575 in addition to the $900 allowed him by the court for the maintenance of the widow of the testator, and $500 as a fee for his attorneys, leaves as total amount of debits against defendant $10,118, and credits in his favor $4,804.71, leaving as a basis for distribution a balance of $5,313.29, but as against the respective shares of some of the distributees defendant is entitled to credit for amounts already paid them, as will be shown in the figures following:

The distribution of the $5,313.29, should then be as follows:

| | | |
|---|---|---|
| To Linus Sanford one-fourth...... | | $1328.32 |
| To heirs of Pearl Sanford one-fourth | | 1328.32 |
| To heirs of Teresa Albert one-fourth | $1328.32 | |
| Less amounts paid her .......... | 1100.00 | |
| | 228.32 | |
| Of which Henry Albert is entitled to one-sixth .... .... ...... .... | | $38.05 |
| Wm. J. Albert is entitled to one-sixth ...... .... ...... .... | | 38.05 |
| Robert G. Albert is entitled to one-sixth ...... .... .... .... | | 38.05 |
| Clement Albert is entitled to one-sixth ...... .... .....:. ...... | | 38.05 |
| Jules Albert is entitled to one-sixth .... .... .... .......... | | 38.05 |
| Annie Rozier is entitled to one-sixth ...... .... .... .... .. | | 38.05 |

To heirs of Mrs. Hunt ........... $1328.32
   Of which Phil. J. Hunt is entitled
     to .one-half ..... ...........    664.16
   Less amount previously paid him    174.00  $ 490.16

   And Mrs. Rowe is entitled to ....   664.16
   Less amount previously paid her   100.00    564.16

The judgment is reversed, the account is re-stated to conform to the above views, and a final judgment will be entered here in accordance therewith, the defendant Linus Sanford to pay the costs incurred in the circuit court.

All concur.