BARRY *v.* BARRY *et al.*

(In Banc. April 23, 1945. Suggestion of Error Overruled Sept. 24, 1945.)

[21 So. (2d) 922. No. 35829.]

Means Johnston and J. O. Eastland, both of Greenwood, for appellant.

Pollard & Hamner and Nelson E. Taylor, all of Green-wood, for appellees.

**Alexander, J.,** delivered the opinion of the court.

W. S. Barry died May 11, 1933, leaving a will in which his son, W. S. Barry, Jr., and his daughter, Mrs. Caralisa Barry (Pollard) were named joint executors and trustees. The litigation now before us originated in a petition filed by Mrs. Pollard with her final account, in which she alleged that her co-executor had without authority diverted certain sums from the estate and prayed citation and decree for repayment. These sums included $11,183.33 as alleged salary, $11,109.59 as alleged bonus, $924.31 as a cash discrepancy and $3,000 as rental of property of the estate. The original petition by amendment making all the heirs parties attained the status of a bill in chancery, and by the cumulative processes of pleading resulting in defenses and counterclaims through amended bills and cross-bills, the following issues emerged. Complainants' ultimate demand included the items referred to, plus an increase of the salary demand to $11,233.33, and an additional item of $4,261.02 represented by the overdraft of one Price, bookkeeper employed by W. S. Barry, Jr. The latter in his answers, although not denying the correctness of the amounts withdrawn as salary and bonus, contested any liability for their refund. He denies receipt of any of the amounts represented by certain cash tickets, some of which bore his name, and any liability for rent of the property of the estate used by him in his

own business and that of the estate during its management. By way of justification for the withdrawals as salary and bonus, he pleads an agreement thereunto with the other heirs.

In his cross-bills, as amended, the defendant prayed for confirmation of his title to the Wilson Deadening, a 453-acre tract in the heart of the plantation lands of the estate. Further demand was made to cancel a partition of the estate lands by convention of all the heirs since it was made in ignorance of defendant's part ownership of the Wilson tract, and its inclusion in his allotment resulted in an inequitable award. Complainants' answer thereto is that the said tract had been conveyed by defendant to W. S. Barry, Sr., prior to the latter's death, and this contention is in return rebutted by defendant's assertion that the latter deed was procured without consideration and by fraud, and its cancellation is prayed, together with mesne rentals. Elaboration of the several issues will be undertaken as each is discussed.

*Appellant's Liability for Refund of Amounts Withdrawn as Salary and Bonus.* For some time prior to the death of the testator, W. S. Barry, Jr., had been engaged in the insurance business in the City of Greenwood. In 1924, he was induced by his father to assist in a clerical capacity at the plantation near Shellmound in the same county. To this request the son acceded, though not without misgivings or inconvenience and some expense by way of supplemental help in the continued conduct of his own business. Two years later, he was by his father employed as general manager of the plantation at a salary of $150 per month, together with a bonus of one-sixth of the profits of the operation. Such arrangement continued to the time of the death of the testator. The lands involved approximately 6,000 acres, of which about 4,260 were in cultivation.

In examining appellant's contention that he was authorized, by continuing to manage the plantation, to

credit himself with sums commensurate with his contract with his father, we must disclose pertinent parts of the will. After having constituted W. S. Barry, Jr., and Caralisa Barry as trustees for certain legatees, and having made certain devises, Item 3 bequeathed to Caralisa Barry (Pollard) the sum of ten thousand dollars "as compensation to her for her services in attending to the legal work of my estate and in carrying out the provisions of this will . . . ." Item 4 is as follows: "It is my will and I do hereby give, devise and bequeath unto my said son, W. S. Barry, Jr., the sum of Six Thousand Dollars to be paid to him at the rate of One Hundred Dollars per month for five years from the time of my death to compensate him for his services in attending to the general business interests of my estate and in carrying out the provisions of this will."

Item 5 is as follows: ". . . it is my will that the said W S Barry, Jr., and Caralisa Barry, when acting as trustees and when acting as executors, shall 'for the benefit of my estate and the benefit of the trusts herein created, have full and complete power, jointly to sell, incumber, assign, hypothecate, mortgage, manage, invest, reinvest, or transfer any part of my estate and to extend the time of payment of my indebtedness due my estate and to handle generally my business interests for the period of five years from the date of my death."

It was also provided that the estate be kept intact for five years after testator's death unless the joint judgment of the trustees directed otherwise. Appellant and Caralisa Barry (Pollard) were named joint executors without bond.

The testator died May 11, 1933. Thereupon, appellant undertook the management of the estate including the plantation. He credited himself with salary at the rate of $150 per month through July, 1936, and thereafter at $250. He also withheld as bonus payments from profits the sum above mentioned.

Appellant interposes as a defense to the demand for refund of these amounts an alleged agreement with the other heirs (of whom he was of course one) that he should "stay on the place and manage it on the same basis." This was corroborated by appellant's wife. At the time of the alleged oral agreement, one of the heirs was a minor. The other heirs denied any such agreement or any knowledge that W. S. Barry, Jr., was crediting his account with the monthly salary and bonus. We need not here add more than that the existence of this agreement was a factual issue. We are not justified in reversing the chancellor's finding that the agreement was not established.

It is, however, insisted by appellant that, having performed the services for which he paid himself, he is at least entitled to a reasonable compensation. Evidence was adduced to show that the amounts retained were commensurate with the responsibility involved. From this point, which could hardly be contested, we must turn our attention to the issue of legal liability of the estate to a trustee who assumes to manage its business affairs. We find no warrant to widen this issue by injecting any principles of waiver or estoppel. And since our first inquiry is whether the trustee may recover in any event, we need not consider the matters of personal inconvenience and business efforts involved, nor their value.

Counsel have diligently debated the contention whether the services rendered by W. S. Barry as executor-trustee were provided for and required by the provisions of Item 4 of the will. Appellees contend that it contemplates full compensation, not only for "his services in attending to the general business of the estate," but also for "carrying out the provisions of this will," one of which was "to . . . manage . . . any part of my estate." Appellant insists that the "general business interests of the estate" does not include the special business of managing its farms. The members of the court are not in

agreement on this point, nor need it be decided, for the following reason:

The provisions of Item 4 contemplated either that (1) the sum of $100 per month was in full for all services in managing all the estate properties; or, (2) no compensation therefor was provided. The chancery court has power to authorize the executor to continue the business of the testator. Without such authority, the estate is not liable upon any basis of quantum meruit. Crescent Furniture, etc., Company v. Morgan, 178 Miss. 824, 173 So. 290. It is of interest that the attorney who drew the will was plaintiff in Owen v. Stoner, 148 Miss. 397, 114 So. 613, which denied to the attorney payment for services rendered as executor since he could not bind the estate by any contract between himself as executor and himself as attorney. It was this attorney who in drawing the present will discussed with appellant and the testator the proper compensation for helping the co-executor to "carry out the terms of the will" and who suggested in the face of appellant's disavowal of any purpose to accept pay, the sum mentioned in the will and the services which it contemplated.

We find no creditable dissent from the rule that the acceptance by an executor or trustee of an appointment under a will whether under a stated compensation or where none is provided (save where a statute fixes it) is conclusive of any right to an increased compensation. It was stated in Vicksburg Public Library v. First Nat. Bank, 168 Miss. 88, 150 So. 755, 756: "The general rule, supported by nearly all the authorities, is that, when an executor accepts appointment under a will which fixes the compensation which the executor is to receive, the executor must abide by the compensation provided in the will, and is entitled to no other compensation than the will allows. This seems to have been assumed as the correct rule without discussion in Thomas v. Thomas, 97 Miss. 697, 717, 53 So. 630, and we now expressly so hold."

This is in line with the view expressed in 1 Rest. Trusts, Sec. 242, ''if by the terms of the trust it is provided that the trustee shall receive a certain amount as compensation for his services as trustee he is ordinarily entitled to that amount, and unless it is otherwise provided he is ordinarily entitled only to that amount.''

A leading case is In re Balbach's Estate, 56 S. W. 196, 227 N. W. 886, 66 A. L. R. 508, where it is held that it is no test of a trustee's right to compensation for an assumed responsibility, that he could have employed another to perform services for which payment to such other be proper. If it is not within the trustee's province nor duty to perform the services he should employ some one to render them, or if he himself is to be employed such undertaking must be upon agreement of the court or the other heirs or beneficiaries. Snow v. Callum, 1 Desaus. (S. C.), 542; Sprowl's Succession, 21 La. Ann. 544; Bartolet's Appeal, 1 Walk. (Pa.), 77; In re Popp, 123 App. Div. 2, 107 N. Y. S. 277; In re Froelich, 122 App. Div. 440, 107 N. Y. S. 173; In re Peck, 79 App. Div. 296, 80 N. Y. S. 76; In re Larrabee, 98 N. J. Eq. 655, 130 A. 195; In re Oliver's Estate, 129 A. 434, 3 N. J. Misc. R. 453; Gilligan v. Daly, 79 N. J. Eq. 36, 80 A. 994; United States Rubber Company v. Peterman, 119 Ill. App. 610; Peterman v. United States Rubber Co., 221 Ill. 581, 77 N. E. 1108; In re Runyon's Estate, 125 Cal. 195, 57 P. 783; Albert v. Sanford, 201 Mo. 117, 99 S. W. 1068; In re Woods, 55 Misc. 181, 106 N. Y. S. 471; In re Thompson's Estate, 183 Mich. 618, 150 N. W. 318; Washington Loan & Tr. Co. v. Convention, etc., 54 App. D. C. 14, 293 F. 833, 34 A. L. R. 913.

In the case last cited, the familiar rule was followed that an executor or trustee can not accept his appointment and reject the condition as to compensation upon which it is made. It further holds that mere acquiescence by the beneficiaries in his services even where they have notice of his view as to the invalidity of the allowance creates no estoppel. In re Runyon's Estate, supra,

discloses a factual situation much like that here presented. One of the executors who had prior to the death of the testator managed his farms at $100 a month, continued so to act after his death. It was held that regardless of the benefit to the farms he was entitled to no extra compensation, there being no renunciation of the stated stipend.

To the same effect is Collier v. Munn, 41 N. Y. 143, which in addition lays stress upon the principle that "even in respect to such services as executors are not personally bound to render, but for which they may properly employ and pay others, they cannot claim compensation themselves." Compare also Nicholson v. Dent, Robinson and Ward, 189 Miss. 658, 198 So. 552; Byrd v. King, 120 Miss. 435, 82 So. 312. The status of appellant as a member of the family, a trustee and one of the beneficiaries, lends additional propriety to the invocation of the rule. The decree of the trial court for a refund of the salary and bonus withdrawn is affirmed.

*Appellant's Liability for Refund of Other Items.* The sum of $924.31 demanded by the appellees was represented by certain cash tickets found in the cash drawer and safe of W. S. Barry & Company which was the firm under which the farms had been operated. Although some of these tickets bore appellant's name, the auditor and bookkeeper's testimony that all cash tickets had been charged to appellant created an issue of fact, and we shall not disturb the chancellor's finding in appellant's favor.

The refund of the sum of $4,261.02 was sought upon the ground that the appellant's bookkeeper, Price, had been allowed to overdraw his account in that amount. Later, a note was executed by Price to represent and acknowledge the indebtedness. Well founded doubt as to the collectibility of the note is disclosed. We are unwilling to alter the conclusion of the chancellor that appellant, having used due care in the selection of this

employee, whose ability and integrity were highly commended, is not legally responsible for such shortage. Likewise, the issue of rent upon the Howard Street property used by appellant for his own business and by himself and other members of his family in attending to the affairs of the estate was resolved upon conflicting testimony. It was here that the testator had during his life conducted his own business. We forbear further details, none of which are inconsistent with the trial court's finding of non-liability. The three foregoing items are the subject of appellees' cross-appeal.

*The Wilson Deadening Lands.* This is a tract of 453 acres situated near the heart of the Leflore County lands. It was included in the award to appellant by convention of the heirs in a partition agreement. Appellant asserts his discovery, since the partition, that he owned an undivided interest therein as one of the heirs of his mother. We need not exhibit the chain of title by which this tract devolved by deed from appellant's father to his mother and by mesne conveyances back to the father, since consideration of the issues thereby raised is foreclosed by the following conclusion.

On February 13, 1919, appellant duly signed and acknowledged a deed to this tract to his father. It was filed for record February 26, 1941. If this instrument is valid, as it unquestionably is upon its face, this controversy is at an end. It is attacked by appellant as having been fraudulently procured; that such fraud would be presumed in view of a fiduciary relationship; that it was without consideration; and that it was not intended to be a permanent divestiture of title. He further disclaims any recollection of its execution but admits his signature thereto. The appellees attack these contentions upon the following grounds: (1) Appellant is incompetent to testify in regard thereto since his evidence constitutes an attempt to establish a claim against his father's estate arising during the lifetime of the testator, Code 1942, Sec.

1690; (2) that the testimony of R. P. Parish, Sr., a former partner of the testator, seeking to vary the effect of the deed by oral testimony was in violation of the statute of frauds, Code 1942, Sec. 269, and is otherwise incompetent; and (3) there was no fiduciary relationship between the father and the son. A discussion of all these contentions would unduly prolong our opinion, and at most reveal points of only academic interest since we are of the opinion that the deed was executed upon valuable consideration, and its validity is not assailed by any competent proof. The finding of the chancellor denying the prayer of appellant's cross-bill to cancel this deed and for mesne rents is affirmed. Discussion of the principles of election and estoppel are therefore foregone.

The record discloses some discrepancy in the amounts due by way of salary and bonus refund. Computations of interest appear inaccurate. There are other minor readjustments of the account which because of the disagreement between counsel would best be computed upon remand by a master or by concord of counsel.

Affirmed on both direct and cross-appeals and remanded.

## PARTIALLY DISSENTING OPINION.

**Griffith, J.**, delivered a partially dissenting opinion.

As to all features of this case except that which adjudges that appellant shall repay his compensation earned by him as the manager on the ground of the 6,000-acre plantation all of us are in agreement, and if the will fixed and was intended to fix $100 per month to appellant as covering that service as well as his general duties to this large estate, consisting of large properties other than the particular plantation, we would still be in agreement throughout. But it is plain to me from this record that the testator did not so intend, could not justly so have intended, and that every one of these heirs knew,

and all along have known, the true intention. They knew, and beyond all doubt the heir who was co-executor knew, that appellant was continuing in the personal management of the plantation, away from his other business, devoting his time and energies almost exclusively to this immense farm, with all the exertions and anxieties which such an operation imposes upon the manager on the ground, with the understanding on his part that he was doing so under the same arrangement for compensation as to that particular service which he had had with his father, and so knowing they stood by and permitted him to put in five hard years, without a word of warning or dissent to the contrary, and now say that they are not estopped by all the principles of equity and honesty which are applicable to all members of a social community, even including heirs.

It would require many pages to disclose the details of all the facts, from which when the will is construed in the light of all the surrounding circumstances and therefrom the intention is ascertained, and all the facts that transpired subsequent to the probate of the will, which go to show the invalidity of the demand of these heirs against this appellant, and the inapplicability of the authorities relied on by the majority opinion. I must content myself, therefore, by registering my dissent from what I consider, although with deference, an unjust decision, in so far as this matter of compensation is concerned.

McGehee, J., joins herein.

CONCURRING OPINION.

Smith, C. J., delivered a concurring opinion.

I concur in holding that the appellant was not entitled to the compensation here charged by him for managing the plantation that was a part of this trust property for the reason that he did not obtain the consent of

the Chancery Court to make the charge before rendering the service for which he seeks this compensation. It matters not whether the service rendered by the appellant was beyond what was required of him as trustee, or if within his duties as trustee the compensation provided therefor by the trust instrument was inadequate. Where a trust instrument fixes the compensation of the trustee and he rendered personally a service to the trust estate beyond what his duties as trustee require and for which he had the right to employ another, he can not receive additional compensation therefor, unless he is authorized by the Chancery Court so to do before he performs the service.

And if a trustee considers the compensation fixed for him by the trustee instrument to be inadequate, he has one of two options, (1) to decline to accept the trust, or (2) before entering upon the discharge of his duties as trustee to obtain permission of the Chancery Court to charge more therefor than is fixed by the trust instrument.