RICHARD L. THOMAS v. J. MURPHY THOMAS, EXECUTOR ET AL.

[53 South. 630.]

1. WILLS. *Construction. Executory devise. Code 1906, § 2765. Perpetuities.*

An executory devise may be created of realty as well as personalty, is not within Code 1906, § 2765, prohibiting estates tail, and does not violate the common-law rule against perpetuities, where the fee must vest in some one absolutely and at all events within the life or lives in being at the death of the testator and twenty-one years and ten months thereafter.

2. SAME. *Same. Tesamentary trust. Rights of beneficiary.*

Where, under a will creating a trust, the exclusive management of property was invested in the executor, subject to a provision that the net income only should be divided between the sons of the testatrix during their lives and thereafter among testatrix's grandchildren being twenty-one years of age, the interests of the sons in the property were not vendible under execution against them.

3. SAME. *Same. Children. Grandchildren.*

     When used in a will, the word "children" generally does not embrace grandchildren, and the word "grandchildren" does not embrace great-grandchildren.

4. SAME. *Same. Remainder. Time of vesting. Rights. Per sterpes.*

     Where a testatrix created a trust of a portion of her estate for the sole use of her sons for life, then to her grandchildren, to be theirs when they reached twenty-one years of age, and if any died before such age or condition fulfilled, without brothers or sisters, his share should go to testatrix's surviving grandchildren when of proper age and condition fulfilled, but not to become theirs, however, until they attained such age and until all testatrix's own children were dead:—

     (*a*) On the death of the last surviving son, surviving grandchildren did not take a determinable fee, to be divested on failure to attain the age of twenty-one, but all the sons must be dead, and each grandchild must have attained the requisite age, before taking any interest in the estate; and

     (*b*) The grandchildren took *per stirpes*, so that, in case of the death of any one of them before attaining the requisite age, his share would pass to his brothers and sisters, share and share alike, provided they reached twenty-one years of age; and in case any one of them died without brothers or sisters surviving him, his share passed to his cousins, and in case all the grandchildren should die before any of them reached twenty-one years of age, then the estae would descend as if the testatrix had not made a will.

5. SAME. *Trusts. Compensation of trustee.*

     Where testatrix created a trust, the management of which was vested in her executor, and authorized him to convey the trust property, but requiring him to reinvest, and to report to the court, and provided that "for his services for these transactions and attending to this business" he should receive not more than two hundred dollars nor less than one hundred dollars out of her remaining estate, the executor or trustee was entitled to not more than two hundred dollars or less than one hundred dollars, and to reasonable compensation for his services from year to year, according to his success and trouble in managing the trust.

6. SAME. *Same. Amount appropriated to trust.*

     Where testatrix directed that not less than eight thousand five hundred dollars nor more than ten thousand dollars of her estate

should be set aside to create a trust for specified purposes, and she also expressly declared that her purpose in creating the trust was to protect "a part of her estate" for the benefit of her own children, the estate not being sufficiently large to set aside the maximum amount, but being more than the minimum, and made a gift of the residuary estate, the amount to be set aside was to be determined by the excutor in the exercise of sound discretion, leaving a substantial amount for the residuary estate.

From the chancery court of Lee county.

HON. JOHN QUITMAN ROBBINS, Chancellor.

J. Murphy Thomas, executor of the will of Mary E. Thomas, deceased, and others, appellees, were complainants and cross-defendants in the court below; Richard L. Thomas, appellant, was defendant and cross-complainant there. From a decree in favor of the complainants, dismissing the cross-bill, the defendant appealed to the supreme court.

The suit involved the construction of the will of Mary E. Thomas. The facts are stated in the opinion of the court. The fourth and fifth items of the will are as follows:

"4th. I direct that my executor can by an order from the court, and he see proper to best interest of said property (the Mary E. Thomas estate) that he can sell, convey and affix my signature to said conveyances for any and all of my property now belonging to me. But he must make reinvestments from said sales, and report same to the courts, also place on record all new investments to the amount of not more than $10,000 nor less than $8,500. This may include a part of present investment, and for his services for these transactions and attending to this business, he can have a fee of not more than $200 nor less than $100 out of my remaining estate."

"5th. After all fees are paid and all debts that may accrue from such sales and conveyances, as described, and all expenses whatsoever are settled out of my remaining estate, I will and

direct that this remaining estate, if there be any, is to be divided between F. G. Thomas, and my executor, J. M. Thomas."

Code 1906, § 3765, referred to in the opinion, is as follows:

"Estates in fee-tail are prohibited; and every estate which, but for this statute, would be an estate in fee-tail, shall be an estate in fee-simple; but any person may make a conveyance or a devise of lands to a succession of donees then living, not exceeding two, and to the heirs of the body of the remainder-man, and, in default thereof, to the right heirs of the donor, in fee simple."

*Anderson & Long,* for appellant.

The will creates what it denominates "The Mary E. Thomas estate," to consist of not less than eight thousand five hundred dollars, nor more than ten thousand dollars. By its provisions, Mrs. Thomas' sons are to enjoy the income from this estate during their lives. After the death of her sons, she provides that this "Mary E. Thomas estate" is to go to her grandchildren, and to be theirs when they reach the age of twenty-one years. These provisions of the will are contained in sections eleven and twelve. It is contended on behalf of the appellant, that these sections of the will violate our statutes and the common law against perpetuities, and that under the law, the first takers, R. L. and J. M. Thomas, get a fee-simple title to the "Mary E. Thomas estate."

It will be seen by section eleven of the will, that the grandchildren do not get the estate until they reach the age of twenty-one years; and if they do not reach that age, they fail to get the estate. Cross-limitations between the grandchildren are provided for. In case of the death of one of the grandchildren before attaining the age of twenty-one years, its share goes to its brother or sister, share and share alike; provided any brother or sister shall reach the age of twenty-one years; and in the event

of the death of one of them, without brother or sister surviving, then its share goes to the other grandchildren, the first cousins, share and share alike, provided always they reach the age of twenty-one years. There is no provision whatever in the will as to what shall become of the "Mary E. Thomas estate" in the event all of the grandchildren die before attaining the age of twenty-one years. It is left suspended and undisposed of, so far as section eleven of the will is concerned. We maintain that sections eleven and twelve of the will, taken together in connection with all the balance of the will clearly shows that Mrs. Thomas intended to limit this estate to her own "flesh and blood" indefinitely. If we are correct in this, then it violates the common law rule against perpetuities, and her sons, R. L. and J. M. Thomas get a fee-simple title to the "Mary E. Thomas estate." We maintain that the will, taken as a whole, shows that Mrs. Thomas used the term "grandchildren" to include great-grandchildren, and on down the line of her bodily heirs to the remotest time. Putting the construction on the will which the court below does in its decree, let us see what may take place: Suppose Mrs. Thomas' sons, R. L. and J. M. Thomas, should die, each leaving surviving children, and that all of the children of J. M. Thomas should die before reaching the age of twenty-one, but after marriage, leaving issue; and that the child of R. L. Thomas should attain the age of twenty-one years; the result would be that the child of R. L. Thomas would get the whole of the "Mary E. Thomas estate," and the grandchildren of J. M. Thomas would get nothing, because their parents had died before reaching the age of twenty-one years.

Take another illustration: Suppose all of the children of J. M. Thomas should die before reaching the age of twenty-one years, without children surviving, and the child of R. L. Thomas should reach the age of twenty-one years and marry, and then die with issue. Then clearly the surviving husband would take

by inheritance the whole of the "Mary E. Thomas estate." It
is clear from the will that no such condition of things as this was
contemplated by Mrs. Thomas in the making of her will. It
is not believable that she ever had in her mind that if one set
of grandchildren never attained the age of twenty-one years, but
left surviving children, those children were not to have an in-
terest in her estate; but all of it should go to the children of her
other son, who reached the age of twenty-one years. And it is
not probable, in view of section twelve of her will, that she ever
contemplated or intended that the husband of one of her grand-
children should get the whole of her estate, notwithstanding that
there might be surviving grandchildren, the sons and daughters
of her other son.

In order to give section twelve any meaning at all, the term
"grandchildren" must have been used by Mrs. Thomas to
include great-grandchildren and so on down the line, to the
remotest degree. If the will does not mean this, then section
twelve has no meaning. Where the testator has clearly shown
by the use of the other words that he used the word "children"
as synonymous with "descendants" or "issue" to designate or
include legitimate offspring, grand-children or remoter descend-
ants, then the term will be given that meaning. 5 Am. & Eng.
Ency. of Law (2d ed.), 1087; *Lilliebridge v. Adie,* 1 Mason
(U. S.), 224; *Rholon v. Blevin,* 99 Cal. 649; *Wiley v. Smith,*
3 Ga. 563; *Waddell v. Leonard,* 53 Ga. 697; *Ide v. Ide,* 5 Mass.
500; *Matter of Brown,* 29 Hun (N. Y.) 417; *Matter of Palon,*
41 Hun (N. Y.) 497; *Shannon v. Pickell,* 55 Hun (N. Y.)
130; *Mowatt v. Carow,* 7 Paige (N. Y.) 328; *Magaw v. Field,*
48 N. Y. 668; *Plamer v. Horn,* 84 N. Y. 516; *Hughes v.
Hughes,* 12 B. Mon. (Ky.) 121; *Douglas v. James,* 66 Ver. 21.

In a recent case this court has held the following in construing
a will: "The one fundamental rule governing the construction of
all wills, is to ascertain what the intent of the testator was.

This intent must be gathered, it is true, from the language used in the will, and by this is meant that such intention shall be gathered from the four corners of the instrument; that is to say, from the whole will, the whole frame of the will; the whole scheme of the testator, manifest by the will, taking into consideration and giving due weight to every word in the will, etc. *Ball v. Phelan,* 94 Miss. 293, 49 South. 956; *Jordan v. Roach,* 32 Miss. 481; *Dibrell v. Carlyle,* 48 Miss. 691; *McKenzie v. Jones,* 39 Miss. 230; *Sudduth v. Sudduth,* 60 Miss. 366; *Pressgrove v. Comfort,* 58 Miss. 644; *Hudson v. Gray,* 58 Miss. 882; *Busby v. Rhodes,* 58 Miss. 237; *Carwell v. Willis,* 57 Miss. 555.

By the common law rule, which applies to both real and personal property, and as well to equitable and legal estates, the fee or absolute title would vest within the lives of persons in being and twenty-one years and ten months thereafter. If Mrs. Thomas, testatrix, meant, as she must have done, by the term "grandchildren" to include great grandchildren and remote descendants, this rule is violated.

The court below was clearly in error in holding that the grandchildren of Mrs. Thomas took a determinable fee, subject to be divested if they never reached the age of twenty-one years. Section eleven of the will seems plain on this point. It expressly provides that the grandchildren take nothing before they are twenty-one years of age. We do not know that this construction by the chancery court below alters the case. It is to be observed that in two events there is no limitation over of the "Mary E. Thomas estate." In the event of the death of her sons not leaving children surviving them, she does not provide for the disposition of her property. And in the event of the death of all of her grandchildren before reaching the age of twenty-one years, there is no limitation over to any one; it is left suspended and undisposed of. This is another strong evidence of the fact that she intended this property for her great

grandchildren and on down, as well as her grandchildren. It showed what she meant when she said she wanted her "flesh and blood to have it."

A part of the "Mary E. Thomas estate" consists in a house and lot in Tupelo of the value of about three thousand dollars. The court below held that by her will she made personalty of this real estate; and that Code 1906, § 2765, which applies alone to real estate, has no application. By Code 1906, § 2765, a person may make a conveyance or devise of the lands to a succession of donees then living, not exceeding two, and to the heirs of the body of the remainderman, and in default thereof, to the right heirs of the donor in fee-simple.

We submit that Mrs. Thomas' will devised this land to a succession of donees exceeding two, and to several who might come in after the will went into effect. First: R. L. Thomas and J. M. Thomas are two donees; for the will provides cross-limitations to each other. Then all of the grandchildren living at the time of her death are donees, for there are cross-limitations between them; and then all of her grandchildren who might be born after her death are donees with cross-limitations. In the court below it was insisted that the case of *Middlesex Banking Co. v. Field,* 84 Miss. 646, was decisive of this question. We say that it is not. In the case cited by opposing counsel, the court held that Eldon C. Field was not a donee, and that Bate Field and J. H. Field were donees, numbers one and two, which did not violate the statute. We assume that if there had been three instead of two donees, it would have violated the statute.

By section three of the will, the "Mary E. Thomas estate" is created, which is not to consist of more than ten thousand, nor less than eighty-five hundred dollars. The chancery court held that if it took all of the estate to make ten thousand dollars, the "Mary E. Thomas estate" should consist of ten thou-

sand dollars; and if all their property was of less value than ten thousand dollars, all of it should constitute the "Mary E. Thomas estate." We maintain that the court below was in error and that Mrs. Thomas, the testatrix, intended the estate to be either ten thousand dollars or eighty-five hundred dollars; and that if there was not a sufficiency of her property to make the former sum, then the estate should be the latter amount.

The whole estate amounted to something over ten thousand dollars; but after paying funeral expenses and other costs incident to the estate, it will be less than this sum. Under these circumstances, we insist that the "Mary E. Thomas estate" should be eighty-five hundred dollars, and the balance of her property above this sum should go to her two sons, R. L. Thomas and J. M. Thomas.

*J. M. Thomas,* for appellees.

It is not questioned that, if the testatrix used the terms grandchildren in the sense of meaning heirs or descendants, then a fee-tail estate would be created and the rule against perpetuities violated. I contend that the rule for the construction of the will, and the one by which a proper construction of the will, and the one by which a proper construction of the two sections of this will may be had is laid down in the case of *Ball v. Phelan,* 49 South. 956. The one fundamental rule governing the constructions of wills is to ascertain what the intent of the testator was. This intent must be gathered, it is true, from the language used in the will, and by this it meant that such intention shall be gathered from the four corners of the instrument; that is to say, from the whole frame of the will; the whole scheme of the testator manifested by the will, taking into consideration and giving due weight to every word in the will; and whence once the actual intent of the testator at the time of the making of the will has been in this way ascertained all

minor, subordinate, and technical rules of construction must yield to this paramount intent thus ascertained.

The fact that there are no technical legal terms in the will is convincing that the testatrix had no knowledge that the term "grandchildren" would ever be construed as meaning heirs or descendants, and that she intended by the use of the word "children" as being children in the primary sense and "grandchildren" as being children of her children as used in the primary sense. A most forcible demonstration that this is true is shown by the fact that in one paragraph the testatrix uses the following language, "and each set of grandchildren to have what would have been their father's part." The testatrix only had two children, each being men. If she had in her mind the use of the word "grandchildren" as being heirs or descendants, she would no doubt have said that each set of grandchildren, greatgrandchildren, etc., were to have what would have been their father's or mother's part. It is very clear that the mind of the testatrix was at this point directed to her sons.

Again a construction of the meaning of the word "children or grandchildren" should not be put upon the will which would be foolish. To illustrate: could it be thought for a moment that the testatrix when she says that this estate was to go to her legitimate grandchildren to be theirs "as a bequest at the death of my children," could have intended that this bequest should not take effect when all of her grandchildren and great grandchildren, using the words in the meaning as heirs or descendants when if such a construction were put upon it it would be so apparent to the testatrix that the fee would never vest at all for there are no words in the will other than these which would indicate how far in the future that such descendants would take the fee; nothing definite whatever would have been in the mind of the testatrix. It is a familiar fundamental rule of construction that no strained construction will be read into

a will if there should be other wording used in the will that would permit a different construction from the plain and obvious scheme thereof.

It is insisted that the words as used "it is not theirs until this time specified" and to use the language of the other will "it does not become theirs until this age" conveys the meaning that the fee does not vest until they, the grandchildren, are twenty-one years of age and therefore the chancellor erred in holding that the fee vested in the grandchildren at the death of R. L. Thomas and J. M. Thomas, the children. Applying the rules of law above quoted let us see what she really meant by this. It is apparent that immediately preceding this clause she also used the words "that this estate should go to her legitimate grandchildren." Certainly there is an apparent conflict, in one breath she says that it is not to be theirs until they are twenty-one years old, thereby indicating as is contended by appellant that the fee did not vest until this time, and in the same paragraph the words indicate that the fee is to vest on the death of her children as shown by the use of the words "to be theirs as a bequest at the death of all of my children."

Now then which is meant and when did the testatrix intend for the fee to vest? It is a settled rule of law if one construction can be placed upon the will which if fairly intended thereby that would make it legal that such construction should be adopted as against a construction which would make it in violation of law, and this argument is addressed upon the idea that if the fee should not vest until they become twenty-one years of age cross limitation would be permitted thereby, making it violative of the rule against perpetuities, which position taken by appellant I most seriously contend is wrong.

It is very clear from the entire will that the income of the estate was to go only to the children and under no phraseology of the will can it be contended that testatrix intended to vest the

fee in her children. On the contrary from the four corners of the will, and especially from section twelve she only intended for her children to be protected by receiving the income from the estate. Can it be presumed without any words to the effect which are clear and unmistakable that she intended to suspend the fee, when a legal construction could be given the will which would vest the fee at the time of the death of R. L. Thomas and J. M. Thomas and still all of the purpose and intent of the will as a whole be carried out? To put a construction upon these words "it does not become theirs until this age" would be directly antagonistic to the other words used "that it was to be a bequest at the death of my children." It would be no violence of the law nor to the whole intent of the testatrix as expressed by the will for the fee to vest at the death of the children instead of suspending it for a period of twenty-one years, especially in view of the decision of the court below based upon the authorities in this state and authorities generally that this fee is what is known as a determinable fee subject to be divested by the death of such grandchildren before they become twenty-one years of age.

If the testatrix had intended that this estate should descend perpetually she would certainly have made provision to that effect, since she seems to have covered almost every possible contingency. On the contrary, however, she expressly provides that "If any of these grandchildren die before the age of twenty-one years or conditions without brothers or sisters what would have been their part goes to my surviving grandchildren." The court will presume, placing itself in the place of the testatrix, that she knew the ages of her children and grandchildren then living and whether or nor her grandchildren would, if alive, be of marriagable age prior to the death of their respective fathers. Then if section twelve means what counsel for appellant contend, why did not the testatrix write this section as follows: "If any of these grandchildren die before this age or conditions

without brothers or sisters or children or descendants," etc? If she had intended that this property should take the course contended for appellant it seems to us a reasonable conclusion, in view of the fact that she provided in a dozen sections of her will for almost every possible contingency, viz., that of the devise lapsing and going to others besides her grandchildren.

The principle of law that where it is clearly shown that a testator used "children" as synonymous with "descendants," then that meaning will be given to the word, is not disputed. How is it clearly shown here? Counsel for appellant say by section 12 of the will. But again the court must look to the situation of the testatrix and the beneficiary. Her three children, all sons, were married at the time of making this will and in the event of the death of any one of them, subsequent to the death of the testatrix, without children, then the widow of such deceased son would have inherited his entire share of the estate of testatrix, had she not made this will in this form and then others than her "flesh and blood" would have participated therein, without any of her other children ever having an opportunity to have shared therein. Whereas, in the second illustration given by counsel for appellant of all of the children of J. M. Thomas dying without issue before reaching the age of twenty-one years and the husband of the daughter of R. L. Thomas inheriting her estate, the estate was compelled to have vested in said daughter (grandchild) before such event could take place, and thus the desire of testatrix would have been fulfilled.

As to the first illustration given by counsel for appellant, viz., that in the event of all of the children of J. M. Thomas dying before reaching the age of twenty-one years leaving issue and of the daughter of R. L. Thomas reaching the age of twenty-one years thereby taking the entire estate to the exclusion of the great-grandchildren, we fail to see how this is at all conclusive. There is no evidence that the testatrix intended that each grandchild should share alike.

WILLING,* Special Judge, delivered the opinion of the court.

The executor named in the last will and testament of Mrs. Mary E. Thomas filed a petition in the chancery court of Lee county for a construction of the will of the testatrix, and for instructions as to his duties as said executor.

Mrs. Thomas died in the city of Tupelo during the year 1905, and among her papers were found two documents, purporting to be her last will and testament. Both of said wills bore the date of February 22, 1901. Both were holographic in character, being wholly written by the testatrix. Both contained substantially the same provisions, and both were admitted to probate. At the time the will was made, Mrs. Thomas had three children, R. L. Thomas, J. M. Thomas, and F. G. Thomas, all of whom were married. R. L. Thomas had two children, one of whom died before the testatrix. J. M. Thomas, at the time the will was made, had one child, and at the death of the testatrix, he had four children. F. G. Thomas died intestate before his mother, leaving a widow and no issue. The sole heirs and legatees of the testatrix, at the time of her death, were her two children, the said R. L. Thomas and J. M. Thomas, and their children. Her estate, at the time of her death, consisted of personal property to the value of about $7,800, and a house and lot in the city of Tupelo, worth about $3,000.

The executor asked the court to construe the will on the following points: (1) Was the creation of what is denominated in the will as the "Mary E. Thomas estate" valid, or does it violate the law against perpetuities? (2) If the creation of the Mary E. Thomas estate be valid, then what amount should be set aside by the executor to constitute the Mary E. Thomas estate? (3) What does the word "grandchildren" in the will include, whether

ANDERSON, J., having been of counsel before his appointment to the bench recused himself and R. P. WILLING, ESQ., a member of the supreme court bar was appointed and presided in his place.

those living at the time the will was made, or those living at the time of the death of the decedent, or those living at the time of the testatrix's own children's death, and when did their estate vest? (4) Should there be any residuary estate, to whom should it go under the will? (5) What are the powers and duties of the executor under the will, and what should be his compensation?

R. L. Thomas and his child and the four children of the executor were made parties defendant to the petition. R. L. Thomas answered the petition, made his answer a cross-bill, and prayed that the will be declared void on account of its being violative of the law against perpetuities, and for a decree giving the whole of said estate of every kind and character to cross-petitioner and J. M. Thomas share and share alike, to take effect and be vested immediately. The cross-petitioner further insisted in said petition that, should the court hold the Mary E. Thomas estate to be a valid estate, only the sum of $8,500 should be set aside to constitute the said estate. The defendants to the cross-petition demurred thereto, and the case was tried on the demurrer. The court sustained the demurrer, and dismissed the cross-petition, and construed the will contrary to the contentions of the said R. L. Thomas, who prosecutes this appeal.

The will provides that what is known as the "Mary E. Thomas estate" should not be less than $8,500, nor more than $10,000, and by its provisions the sons of Mrs. Thomas are the sole beneficiaries of this estate during their lives, and after the death of the sons it is provided in the will that the estate is to go to her grandchildren, to be theirs when they reach the age of twenty-one years. The provisions of the will with regard to the disposition of the Mary E. Thomas estate, after the death of the sons of the testatrix, are contained in section 11 of the will, which is in the following language:

"I direct that after the death of my three sons, that the re-

maining principal and its income or interest, if there be any, of the said Mary E. Thomas estate is to go to my legitimate grandchildren, to be theirs as a bequest, at the death of all my children, and when they (my grandchildren) arrive at the age of (21) twenty-one years or more of age, it does not become · theirs until this age, and all my own children dead, each set of grandchildren is to have their father's pro rata part. If any of these grandchildren die before this age, or conditions, without brothers or sisters, what would have been their part goes to my surviving grandchildren wherever they may be when proper age and conditions are fulfilled, but any of these grandchildren can after the death of my children have the income from this said estate for educational purpose or even for a living, if their mother proves she has not a sufficiency for their maintenance, or education, but this fact must be proven."

Section 12 of the will is in the following language:

"The intent and purpose of this my last will, is for the protection of a part of my estate for the benefit of my own children so long as they live, and then for my own flesh and blood after they are gone." ‹

It is earnestly contended on behalf of appellant that the creation of the Mary E. Thomas estate violates the common law and our statutes against perpetuities. It is claimed that sections 11 and 12 of the will. taken together. show that Mrs. Thomas intended to limit the Mary E. Thomas estate to her own flesh and blood indefinitely; that the word "grandchildren" includes great-grandchildren, and on down the line of her bodily heirs to the remotest time; and that therefore the will violates the common-law rule against perpetuities, and that R. L. Thomas and J. M. Thomas take a fee-simple title to the entire Mary E. Thomas estate. It is further contended that, even should the Mary E. Thomas estate be valid so far as concerns the personalty, it is invalid as to the realty, because it violates section

2765 of the Code of 1906, in that a life estate is devised to a succession of donees, exceeding two, and to several who might come into being after the will went into effect, whereas the statute provides that only two donees can take in succession, and that therefore an estate tail was created, which by the statute was converted into an estate in fee simple, and that the first takers, to wit, R. L. and J. M. Thomas, F. G. Thomas being dead, got a fee-simple title to all the real estate embraced in the Mary E. Thomas estate.

The chancellor held that the real estate was by the doctrine of equitable conversion changed from realty into personalty, and that, inasmuch as all the Mary E. Thomas estate consisted of personalty, the creation of the trust estate did not violate the law against perpetuities. In our view of this case, it is not necessary to decide whether or not, by the doctrine of equitable conversion, the realty was changed into personalty under the terms of the will. The creation of the Mary E. Thomas estate violates neither the common law nor the statute law. It makes no difference whether the estate consists of realty or personalty, or both. The limitation of the estate is valid, both as to realty and to personalty. It is admitted in the argument that the statute prohibiting estates in fee tail has no application to personalty, and that we must look to the common-law rule as to perpetuities so far as personalty is concerned.

It is insisted, however, by counsel for appellant, that an estate in fee tail was created by the testatrix, and that under the statute (section 2765 of the Code) prohibiting estates tail the estate in fee tail was converted into an estate in fee simple. The statute above referred to has no application to this case whatever. The limitation of the trust estate is by way of executory devise, and the testatrix did not create an estate tail in limiting the Mary E. Thomas estate. The statute aforesaid prohibited estates tail, and authorized a statutory substitute therefor, but

left executory devises unaffected. See opinion of Judge Calhoon in *Banking Co. v. Field,* 84 Miss. 646, 37 South. 139. There may be a limitation by way of executory devise of realty as well as of personalty, and the common-law rule against perpetuities is the same, whether the estate limited consists of realty or personalty.

No estate, legal or equitable, vested in the sons of the testatrix under the provisions of the will. The will creates a trust estate, which is under the exclusive control and management of the executor, the net income from which is to be devided among the three sons, during their lives, and which estate on the death of the sons is to go to the legitimate grandchildren of the testatrix, when they arrive at the age of twenty-one years. Under the terms of the will, in case of misfortune or sickness of any one or more of the sons, the entire income from the trust estate may be used for the relief of the one in distress, and in case any one of the sons or all of them should become involved in serious trouble, whereby they may be in jeopardy of life or liberty, the entire trust estate may, if necessary, be consumed in their defense. The sons took no estate under the will, which is vendible under execution. See *Leigh v. Harrison,* 69 Miss. 923, 11 South. 604, 18 L. R. A. 49. The entire Mary E. Thomas estate, when set aside, will be held by the executor in trust for the purposes declared in the will, and must be by him administered in accordance with the provisions of the will.

Measured by the common-law rule, which is the only rule applicable to this case, the creation of the trust estate does not violate the law against perpetuities, and it is therefore valid. To constitute a valid executory devise at the common law the contingency upon which it is to take effect must occur within a life or lives in being and twenty-one years and ten months thereafter. See *Caldwell v. Willis,* 57 Miss. 555. It is true that in the case above referred to the bequest was of personalty;

but, as stated by Judge Calhoon in the case of *Banking Company v. Field, supra,* the rule is the same as to realty. If, then, the fee in the Mary E. Thomas estate, whether it consists of realty, or personalty, or both, must vest in some one absolutely and at all events within a life or lives in being at the death of the testatrix and twenty-one years and ten months thereafter, it does not violate the common-law rule against perpetuities.

It is insisted by counsel for appellant that the Mary E. Thomas estate is void at the common law, because it is claimed that Mrs. Thomas used the word "grandchildren" in the sense of great-grandchildren, and that she meant to limit the trust estate to her remotest posterity. They draw this deduction from the language of section 12 of the will, wherein the testatrix said that she wanted to protect her own children so long as they live, then to protect her "own flesh and blood" after they are gone. The word "children" is rarely held synonymous with "heirs," or "bodily heirs," and generally it does not embrace grand-children. See *Cannon v. Barry,* 59 Miss. 287; *Tate v. Townsend,* 61 Miss. 316; *Ward v. Cooper,* 69 Miss. 789, 13 South. 827. In common parlance grandchildren mean the children of children, and not great-grandchildren, unless there is something in the context which requires the forced construction.

We agree with the chancellor that there is nothing in the language of section 12 of the will which requires any such forced construction. When the testatrix wrote "children," she meant her sons, because she called them by name; and when she wrote the words "my legitimate grandchildren," she evidently meant the children of her sons. Her grandchildren, the legitimate children of her sons, are her "own flesh and blood;" and when she made provisions for them in section 11 of the will, she was protecting her "own flesh and blood."

Her three sons were married when the will was executed. Two of them had children then. The testatrix never contemp-

lated the contingency of all of her grandchildren dying before the last of her sons should die. She did not mean by the term "grandchildren" her remotest posterity. She meant the children of her three sons, F. G., R. L., and J. M. Thomas, who should be living at the death of the last of her sons, and who should attain the age of twenty-one years. This view is strengthened by the language of the will, "each set of grandchildren is to have what would have been their father's part." Mrs. Thomas had no daughters, and in making this provision she clearly had in mind her three living sons, and by the term "grandchildren" she meant the children of those sons, not great-grandchildren and her descendants to the remotest degree.

Then, again, the will provides that, if any of the grandchildren die without brothers or sisters before arriving at the age of twenty-one years, their part should go to the surviving grandchildren; that is to say, to their cousins. This provision would indicate that the testatrix was not trying to entail the trust estate indefinitely, but that she was making provisions for the children of her three sons, and not for her remotest posterity.

Even had the testatrix intended that the word "grandchildren" should include great-grandchildren and her descendants to the remotest degree, we are of the opinion that the rule against the creation of perpetuities would not have been violated. No state of facts can be imagined in which, according to the terms of section 11 of the will, the limitation can be more than twenty-one years and ten months after the death of the last of the three sons; and, this being true, the limitation is valid. The fee must inevitably vest in some one under the terms of the will, after the termination of lives in being, to wit, the three sons, and within twenty-one years and ten months thereafter, no matter whether at the death of the last living son he be survived by grandchildren, great-grandchildren, or remoter descendants of the testatrix.

The chancellor erred in holding that at the death of the last surviving son, if there be grandchildren then living, a determinable fee vests in them, subject to be divested if they should not attain the age of twenty-one years. Under the express terms of the will, no estate will vest in the grandchildren who survive the sons until they attain that age. The will provides that "it does not become theirs until they attain this age, and all my own children dead." The sons must all be dead, and each grandchild must attain the requisite age, before it takes any interest in the estate.

The chancellor correctly held that the grandchildren take *per stripes,* and that, in the case of the death of any of the grandchildren before attaining the requisite age, what would have been its share goes to its brothers and sisters, share and share alike, provided, always, they reach the age of twenty-one years, and that, in the event that any one of them should die without brothers or sisters surviving them, its share goes to the other grandchildren, its cousins, and that, in case all the grandchildren should die before any of them reach the age of twenty-one years, then the estate would descend according to the law of descent and distribution.

The chancellor held correctly that the share of F. G. Thomas in the residuary estate lapsed by his death before the death of the testatrix, and descended one-half to R. L. Thomas and one-half to J. M. Thomas, and that therefore the said R. L. Thomas acquired a one-fourth interest in the residuary estate, and J. M. Thomas acquired a three-fourths interest in said estate.

The chancellor also ruled correctly as to the compensation which shall be paid to the executor for administering the trust estate, and for carrying out the provisions of the will.

What amount of property shall be set aside to constitute the Mary E. Thomas estate, and who is to determine the amount? Section 3 of the will is as follows: "I direct that not more than

$10,000.00 (ten thousand dollars) nor less than $8,500.00 (eight thousand five hundred dollars) of my estate be set aside, and known as the Mary E. Thomas estate, and that all of its business be kept separate and apart for special purposes herein stated and devised." If the maximum amount be set aside, as decreed by the chancellor, the entire estate will be consumed, as the estate, both real and personal, after the payment of debts, expenses, etc., will amount to less than $10,000.

It is contended by counsel for appellant that, inasmuch as the net estate is less than $10,000 the chancellor should have set aside the minimum amount of $8,500. The will provides that not more than $10,000, nor less than $8,500, shall be set apart. It does not provide that the value of the estate shall be either the maximum or the minimum amount. It may be in value equal to either the maximum or the minimum amount, or it may be in value between those amounts. Looking at the "four corners of the will," we think that the testatrix did not intend that her entire estate should be consumed by the trust estate. She provided in the will that the trust estate must be set apart, and kept separate from the remainder of her estate, and her executor is to be paid for his services for changing investments out of the remainder of her estate, and in section 5 the testatrix devises the remainder of her estate to be divided equally between her sons, F. G. Thomas and J. M. Thomas. The testatrix in section 12 expressly declares that her purpose in creating the trust estate was to protect *a part of her estate* for the benefit of her own children, etc. It is our opinion, therefore, that the testatrix intended that some substantial part of her estate should be reserved, and that she never intended that the Mary E. Thomas estate should consume all of her property, provided, always, that the trust estate be not less in value than $8,500.

Who is to determine what shall constitute the trust estate? It is evident, from the ample powers with which the testatrix

invested J. M. Thomas as executor, and from the implicit con-
fidence which she reposed in him, that she intended to leave to
him the setting apart of that estate.   Trusting to his honor in
a great measure, the testatrix required of him no bond.   She
provided in her will that he is to continue as executor of her
estate so long as he lives, and so long as he carries out her
wishes to the best of his ability and knowledge.   Under the
power conferred upon him in the will, he can, if he sees fit and
proper, sell under order of the court, any or all of the property
of the estate.   He must make reinvestments of the proceeds of
the sales, place them on record, and make report of the same
to the court, to an amount of not more than $10,000, and not
less than $8,500.

We hold, therefore, that the duty of setting apart the Mary
E. Thomas estate within the limits fixed by the will devolves up-
on J. M. Thomas, the executor.   He cannot set aside the max-
imum amount, because that would consume the entire estate,
contrary to the manifest wishes of the testatrix.   He must not
set aside less than the minimum amount.   Within those limits
he can exercise his sound discretion, provided he leaves some
substantial amount for the residuary estate.

The decree is reversed and cause remanded, with directions
to the chancellor to enter a decree in accordance with the prin-
ciples herein announced.

*Reversed.*