WALTON *et al. v.* WALTON'S ESTATE.*

(Division A.    Oct. 4, 1926.)

[109 So. 707.    No. 25506.]

1. EXECUTORS AND ADMINISTRATORS.
   Executor is liable for loss on purchase and sale of Liberty bonds for the estate without order of court.

2. EXECUTORS AND ADMINISTRATORS.
   Executor, wrongfully procuring satisfaction of deed given by him to secure his note to testator, and selling the security, and using and losing the proceeds, is liable as executor to estate.

3. EXECUTORS AND ADMINISTRATORS.
   Under Hemingway's Code, section 1798 (Code 1906, section 2130), executor must be allowed commission on part of estate administered by him, which, however, does not include sums which he has misappropriated or illegally disbursed.

4. EXECUTORS AND ADMINISTRATORS.
   Under Hemingway's Code, section 1795 (Code 1906, section 2127), liability of surety may not be fixed in proceeding for final accounting by executor.

*Corpus Juris-Cyc References: Executors and Administrators, 24CJ, p. 72, n. 78; p. 119, n. 88; p. 121, n. 31; p. 976, n. 2; p. 998, n. 42 New; p. 1084, n. 77.

Reporter's Note: Able and elaborate briefs discussing the facts here-involved, were filed by *Cutrer & Smith,* for appellants, and *Sellers & Pearson,* for appellee. These facts are dealt with in the opinion of the court, and no good purpose would be served by repetition here.

APPEAL from chancery court of First district of Bolivar county.

HON. C. L. LOMAX, Chancellor.

Proceeding for accounting by Geo. T. Walton, as executor of the estate of John B. Walton, deceased. From the decree, the executor and the American Surety Company, surety on his bond, appeal. Reversed and remanded.

McGOWEN, J., delivered the opinion of the court.

John B. Walton, deceased, an uncle of appellant George T. Walton, died testate on the 10th day of March, 1917, and on March 20th thereafter appellant George T. Walton qualified as executor of the said estate, and filed his bond as such in the sum of five thousand dollars; said bond being signed by the American Surety Company as surety thereon.

Under the will, the devisees and legatees are E. M. Walton, a son, and Bessie Bell Walton, a daughter; the latter being a minor. The will provided that the property therein devised should be divided equally between his son and daughter. The executor was to pay to them only such money as would be necessary to reasonably maintain, support, and educate them, until the year 1921, when the property was to be delivered to them in equal shares.

From the time of his appointment as executor until October 1, 1921, the appellant never made any report of any kind whatever to the court, nor procured any order with reference to the administration of his trust. On said date Bessie Bell Walton filed a petition asking for an accounting on the part of the executor.

Contempt proceedings were instituted against the executor before the court was able to secure from him what is now here before us as his final report, filed the 14th day of February, 1922. Soon after the filing of his report, E. M. Walton and Bessie Bell Walton filed exceptions, and a petition to falsify and surcharge the appellant as

executor, and objecting to the allowance of certain items. After hearing the testimony the. lower court entered a final decree in the cause, disallowing certain items, and found that the appellant owed the estate several sums, aggregating twenty-eight thousand two hundred fifty-two dollars and sixty cents, and ordered that he forth: with pay the said sum in correct proportions to Bessie Bell and E. M. Walton.

The court disallowed two items, aggregating two thousand six hundred twenty-six dollars, for the support of the two children from 1912 to 1919. The court disallowed the sum of one hundred six dollars and ninety-seven cents, loss on United States Liberty bonds, purchased by the executor for the estate and sold by him; his action in purchasing and selling the bonds not having been authorized by the chancery court.

The court disallowed a credit for land notes described by trust deed, of the face value of nineteen thousand dollars, owing by the executor to the decedent, and held that the executor had illegally converted to his own use the land represented thereby, and charged him with interest thereon. This loan from the decedent to the executor was amply secured by a trust deed, and after the death of the decedent the notes were in the hands of the executor as a part of the assets of the estate. The trustees named in the deed of trust were his stepson, Green Seals, and E. M. Walton, the son of the deceased and a beneficiary under the will.

The court disallowed commissions to the executor for his services in administering the estate, and disallowed specifically the sum of four thousand dollars, which he had retained in anticipation of allowance by the court.

At a time when the said E. M. Walton was *sui juris,* and at the request of said executor, the deed of trust on certain valuable lands securing the above sum was by E. M. Walton and Green Seals satisfied of record, at which time the executor was negotiating a sale of the lands to Edwards, and was to receive a cash considera-

tion of seventy-five thousand dollars, which amount was, after the cancellation of the trust deed, paid into the hands of George T. Walton by the said Edwards. Walton made no effort to pay these notes from this seventy-five thousand dollars, but used the money in his own business, and lost all of it during the period of deflation after 1919.

It was shown that George T. Walton, executor, was insolvent at the time of the hearing. The balance found by the chancellor to be due on the notes was fifteen thousand two hundred dollars, and the aggregate amount, including interest, shown on this statement to be due by the executor to the estate, was twenty-one thousand five hundred fourteen dollars and thirty-five cents.

On the first proposition, as to the items of board for Bessie Bell and E. M. Walton, we are of opinion that the chancellor is sustained by the record in holding that the major portion of these claims accrued during the lifetime of the decedent, and were not disbursements made by the executor in the support of these minors and in discharging his trust. The chancellor allowed such board as he found to have been proven by Walton, due his own wife after the death of the decedent. We approve his action in this respect.

Second, a man may be patriotic, and he is to be commended for his patriotism when he uses his own funds; but we cannot lend assent to the proposition that this estate should be charged with a loss which accrued to Walton because of his failure to obey the law with reference to securing the order of the court for the investment and for the sale of the bonds. So that his loss on the purchase and sale of the bonds for the estate, being his own venture, must be sustained by him, and not by the estate; it being shown that there would have .been no necessity for a sale of these bonds below par, if the executor had accounted to the estate for the money which he should have had on hand. So that we approve the action of the court as to this item. It is not a question of

his good faith, but it clearly appears that there was no necessity, if he had properly administered the estate, for a loss on these bonds.

Third, the item of the land notes disallowed by the court: It is clear that this executor wrongfully procured the satisfaction of this trust deed, and wasted the money and the security in his hands without an order of the court, over the protest of one of the beneficiaries, and in utter disregard of his trust. When he procured the satisfaction of the trust deed, he lost this amount to the estate, which was amply secured, as shown by the record in this case, and we can think of no good reason in law or logic for not compelling him to account to the estate as executor for the waste of this security. And the action of the court in charging him with the balance due and interest thereon is approved. He owes the estate individually, and he owes it as executor, because he gave to himself the security and the proceeds thereof.

We next come to consider the action of the court in holding that the executor was not entitled to any commissions for his services as such on the value of this estate. Of course, these sums found to be due, which he has not paid into court and has not accounted for, will not in any event be considered as a part of the estate administered by him. But we do not think the chancellor was warranted in imposing this fine or punishment upon the executor for his failure to account, or to file inventory, or otherwise observe the law in his administration of this estate, because for each of these delinquencies our statutes provide the maximum punishment, which is exceeded, in our opinion, by the order of the court in disallowing all commissions.

Section 1798, Hemingway's Code (section 2130, Code of 1906), is as follows:

"*Allowance to Executor or Administrator—Not Allowed Profit for Increase.*—On the final settlement the court shall make allowance to the executor or administrator for the property or the estate which has been

lost, or has perished or decreased in value, without his fault; and profit shall not be allowed him in consequence of increase. And the court shall allow to an executor or administrator, as compensation for his trouble, either in partial or final settlements, not less than one nor more than seven per centum on the amount of the estate administered.''

We think the latter part of this section is conclusive, that the court is required to allow an executor not less than one nor more than seven per cent. on the amount of the estate administered. We do not think that he is entitled to have commissions calculated upon sums which he has misappropriated, or disbursed illegally, as found by the court. But on that part of the estate for which he has accounted in good faith he is entitled to recover commissions, which should be fixed by the chancery court, the amount of which is in the discretion of the chancery court, within the limits prescribed by the statute. See *Satterwhite* v. *Littlefield,* 13 Smedes & M. 302. We think the chancery court should be permitted by this court to exercise that discretion, bearing in mind, in exercising such discretion, that its abuse of the power would be subject to review by this court.

The final decree entered in this case sought to fix the liability of the surety on the executor's bond, which was not involved in our opinion. The statute only provides for the approval and allowance of the final account, and does not provide for the fixing of any liability, except that of the principal, the executor or administrator. See section 1795, Hemingway's Code (section 2127, Code of 1906), which is as follows:

''*Final Accounts—Hearing and Adjudication.*—If process be returned executed, or publication have been made, the court shall examine the final account so presented and filed, hear the evidence in support of it, and the objections and evidence against it. If the court shall be satisfied that the account is correct and supported by legal vouchers, it shall make a final decree of approval

and allowance, and shall, at the same time, order the executor or administrator to make distribution of the property in his hands. In proceedings for a final settlement, the court may allow any party interested to surcharge and falsify any annual or partial settlement of the executor or administrator.''

We think that part of the judgment which undertook to fix liability of the surety on the accounting is erroneous and should be corrected. In order that the chancellor may fix the commission to be allowed on the value of the estate ascertained to have been administered by the executor, and in order that the judgment may be corrected so as to eliminate the fixing of liability as against the surety on the bond, and for these purposes only, this case is reversed and remanded.

*Reversed and remanded.*