CRESCENT FURNITURE & MATTRESS CO. *et al. v.* MORGAN
*et al.*

(Division A. March 22, 1937.   Suggestion of Error Overruled June 14,
1937.)

[173 So. 290.   No. 32120.]

Brandon & Brandon, of Natchez, for appellants.

828

**Powell, Harper & Jiggitts,** of Jackson, for appellee, Surety.

Argued orally by **Gerard H. Brandon**, for appellant, and by **Louis M. Jiggitts**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

This appeal is prosecuted from a decree of the chancery court of Adams county approving the final account of the administrator as stated by the court, after the hearing of objections and exceptions thereto.

The questions involved are whether or not proper charges and credits have been made and allowed in the lower court. There are numerous exceptions which we will not undertake to set forth at length in this opinion.

H. L. Morgan died intestate on September 17, 1929, unmarried (having been divorced), and Howard Morgan, a son by a first marriage, qualified as administrator of his father's estate on September 18, 1929, furnishing bond in the sum of $10,000 with the Royal Indemnity Company as surety thereon. Appraisers were appointed, and on September 30, 1929, they made an appraisement showing that Morgan, in his lifetime, was engaged as a merchant in the installment sale of furniture. This appraisement was not filed until January 9, 1930. The administrator finally filed his inventory, after being cited so to do, on February 10, 1930. It was substantially the same as the appraisement.

From the date of his appointment, the administrator continued to operate the business for about eighteen months, buying approximately $6000 worth of new goods and employing clerks and other help. The stock of goods on hand at the death of the intestate was appraised and inventoried at around $8000. The major portion of the estate, so far as the book value was concerned, consisted of more than 500 installment accounts for furniture sold on credit, with contract to repossess on failure to pay. The record discloses that on October 9, 1929, the administrator petitioned the court to be permitted to operate the business as provided by section 1682, Code 1930. Interested parties resisted this motion, and it was never disposed of by the court.

It appears that on June 13, 1930, a decree bearing the signature of the chancellor and dated September 21, 1929, was filed in the chancery court reciting that it was based upon a petition therefor, and, in general terms, authorizing the administrator to conduct the business as it had been conducted in the lifetime of the decedent, and to employ help and pay therefor. At the close of the first year, the administrator filed a lengthy first annual account, going into detail as to how he had conducted the business. At about this time, a petition was filed by him to sell the balance of the assets of the estate, consisting of merchandise and installment accounts. Subsequently, this petition was acted upon by the court; an order to sell the assets entered, and finally, in May, 1931, the assets were sold by the administrator and report of sale confirmed by the court without any objection being filed thereto. The sale was for $1,550 for which the administrator finally accounted. The estate was declared insolvent.

On January 31, 1933, the attorneys for the administrator filed a petition setting forth that the administrator was withdrawing funds in bank belonging to the estate and applying them to his own use, and undertak-

ing to set out a survey of the condition of the estate so far as they knew, and praying the court that the administrator and the surety on the bond be summoned into court, and that the court make an order prohibiting the bank from paying money on the checks of the administrator. The chancery court ordered that process be issued, and also issued an order directing the bank not to pay any further sums on the checks of the administrator. The surety on the bond, the Royal Indemnity Company, appeared in court; joined with the administrator in resisting the numerous exceptions filed by creditors to the final account; agreed for a master to be appointed by the court; filed its exceptions to the report of the master, and filed its brief in this court on appeal by the creditors.

The master's report showed that he made and restated the account of the administrator after hearing evidence and examining the account and all the exhibits thereto, and held that the administrator was authorized to conduct the business for one year and had so conducted it in accordance with the terms of the decree presented to the clerk for filing June 13, 1930, about nine months after he had continued to operate the business. It further showed that the master charged the administrator with $27,588.94, and allowed him credits for a total sum of $18,433.80, and found that he was due the estate $9,155.-14. The master further found that prior to September 19, 1930, the administrator had withdrawn and appropriated to his own use the sum of $1,641.25, and after that time had withdrawn $4,291.90, all without order of the court. On these two items the master charged the administrator with 6 per cent. interest, respectively $369.27 and $515.03, making a total of $884.30. The master did not allow any commissions for services rendered by the administrator in the administration of the estate. Such other items of the report as may be necessary will be detailed in considering the exceptions.

On exceptions to the master's report filed by the creditors, the administrator and the surety on his bond, the court restated the account and approved the report of the master as to the charges against the administrator, with the exception of the two items of interest set forth above, and reduced the charges to $26,704.64. The court further amended the report, after first allowing all the credits, amounting to $18,433.80, by adding thereto a salary of $2,100 to the administrator for conducting the business for twelve months, and commissions of 7 per centum on $12,715.03 handled after the first report ($889.05) thus increasing the total credits allowed the administrator to $21,422.85, and thereby finding that the administrator was due the estate $5,281.79. The court further found that there was $1,013.22 in the bank to the credit of this estate, which was directed to be applied to the reduction of the balance due the estate.

1. There are five exceptions which, in effect, except to the allowance to the administrator of any sums for the purchase of new goods and supplies, clerks' salaries, etc., because during the first twelve months the business was conducted by the administrator without an order of the court being filed with the clerk or entered on the minutes. The master found that the order of June 13, 1930, was effective from September 19, 1929, to September 19, 1930. We think the administrator was not authorized to operate the business from and after September 19, 1929, for the reason that no such order was ever presented to the clerk until June 13, 1930, and was effective for about three months, which order was not effective until it reached the hands of the clerk. What became of the order in the interim is not explained in this record. See Howard v. Jayne, 124 Miss. 65, 86 So. 752; Cresswell v. Cresswell, 164 Miss. 871, 140 So. 521, 141 So. 41. However, after a careful examination of these accounts, we are convinced that we would not be authorized to set aside the finding of the master—that

during this twelve-month period, as shown by the first annual account, there was nothing lost to the estate by the operation of this business and the allowance of the administrator's expenses. In other words, all we have is the face of this report, and the evidence of the administrator that his report reflects the true condition of the estate at the end of the first year. Therefore, all these exceptions are disallowed by us.

2. The master and the court below allowed the administrator to take credit for $330 interest on a mortgage note to Britton & Koontz Bank. This payment did not, in any sense, become the obligation of the estate. The claim was not probated against it. We know of no reason why this claim should be allowed as proper against the estate.

3. There was a payment of $283.41 by the administrator as a part of the principal of a mortgage note. This claim was not probated, had not previously been authorized by the court, and was not the administrator's or the estate's obligation. It should not have been allowed by the master, or by the court below.

4. There are exceptions to the following items expended subsequent to the twelve-month period of the operation of the business; $513.26 for merchandise bought; $917.82 for miscellaneous expenses; $27.09 for freight upon merchandise; $447.25 for the salary of a porter for the store. There was no excuse for the administrator to continue the operation of this business after the expiration of the year authorized by law. The right so to do is statutory and of recent origin, and this case is a fair sample of what is likely to occur. Subsequent to September 29, 1930, there was an immense loss by the administrator in this business. Making allowances, as we do, for his evidence that the depression rendered the accounts and merchandise of less value, at the same time, there is no escape from the fact that there was a loss,

and that these illegally paid items should not have been allowed by the master or the court below.

5. The creditors except to the payment of the taxes on the real estate and merchandise which was allowed by the master and the court below. We see no way to avoid the allowance of these expenditures for taxes. Section 1675, Code 1930; Davis v. Blumenberg, 107 Miss. 432, 65 So. 503; Tonnar v. Wade, 153 Miss. 722, 121 So. 156.

There are several other exceptions in which we think there is no merit.

We come now to the action of the chancellor in declining to charge the administrator with interest on the sums which he had withdrawn from the funds of the estate and appropriated to his own use. These withdrawals were without any previous order of the court, and were far in excess of any amount which should have been allowed him by the court, and he continued to make such withdrawals until the bank was directed by decree not to pay his checks. We think the interest allowed was a proper charge against the administrator. His action in this behalf was unwarranted and cannot be condoned, therefore, we approve the report of the master in this charge.

On the question of compensation, the chancellor erred in allowing a salary to the administrator for the first twelve months of the administration, and we sustain this exception to his decree, and decline to allow this $2,100. Section 1740, Code 1930, is the only authority for compensation to the administrator, and therein his compensation is fixed at not less than one or more than 7 per cent. of the estate and necessary expenses. We think the chancellor further erred in allowing seven per cent. as commission on $12,715.03, for the reason that such allowance included more than $6,000 which we have found to be unlawful. As stated in the statute, compensations are allowed on the value of the estate administered.

We approve the report of the master fixing the gross value of the estate at $27,588.94. We have heretofore sustained exceptions to certain items allowed by the master and approved by the chancellor, aggregating $2,518.83, which deducted from the credits allowed by the master leaves $15,914:97 which has been accounted for and disbursed by the administrator. The per centum of the commissions fixed by the statute being either 1 or 7 per cent., the amount is within the sound discretion of the court which has found it to be 7 per cent., and 7 per cent. of $15,914.97 is $1,114.04, which we have determined as the compensation to be allowed in this case. Adding the commissions to the above credits, as amended by us, would give $17,029.01 as the total credits, including commissions, which we have determined to be correct. Deducting these credits from the total charges leaves a balance of $10,559.93 which we find as the amount due to the estate by the administrator on the date of the decree on the master's report.

The administrator is not entitled to commissions based upon that part of the estate for which he did not account or misappropriate. See Walton v. Walton's Estate, 143 Miss. 666, 109 So. 707, 709.

We have endeavored, in fixing compensation to this administrator, to avoid duplication by seeking to eliminate commissions on sales and resales of merchandise.

In administering estates of decedents, the operation of a mercantile business should not be made alluring to the administrator by the allowance of salaries or exorbitant commissions. The administrator evidently took the view that the estate was being administered for his benefit that he might make a livelihood. The purpose is otherwise—for the benefit of parties in interest, creditors, and distributees.

However, the chancellor found that the court had impounded $1,013.22 in the bank and had taken absolute control of it and had ordered disbursement therefrom.

So, in fixing final liability of the administrator herein and the surety on his bond, we deduct from the balance above stated the sum of $1,013.22, thereby fixing the liability of the administrator and the surety on his bond at $9,546.71, this being the amount the chancellor should have found to be due on the date of his decree.

The decree of this court will be that the administrator herein and the surety on his bond are liable to the estate upon the final account in the sum of $9,546.71, for which all proper writs and orders may issue to enforce this decree.

The surety, Royal Indemnity Company, now urges upon this court that no decree should be entered against it in this proceeding on the final account. The surety did not file any direct or cross-appeal. Ordinarily, on exceptions to the final account, a judgment against a surety would be premature, as in the case of Walton v. Walton's Estate, supra, but in the case at bar there was a petition filed showing a breach of the bond, and the surety company waived process thereon, appeared in court, and managed and controlled the exceptions to the final account. It agreed to the appointment of a master, conducted the hearing before the master, and excepted to his report, and has appeared in this court and resisted the claims of creditors, and made no objection to the form of the petition. We think the case at bar is distinguished from the Walton Case, supra. The proceeding as to the surety took the form of a devastavit. The surety company also insists that, in event the court increases the liability above that fixed by the court below, only those creditors who have appealed herein should participate in the increase, and that the surety would only be liable to these creditors for the amount due them. There is no merit in this contention. Section 1745, Code 1930, disposes of it. Even though separate suits were brought against the surety, the statute provides that if the whole penalty of the bond shall be

thus recovered, the recovery shall be apportioned among all creditors whose claims are established against the estate. The same end has been attained in this proceeding. In the case of Jones v. Patty, 73 Miss. 179, 18 So. 794, the court held that the bond was for the protection of all, and a recovery thereon must be divided among all the creditors according to their rights. In the case at bar, the creditors were only undertaking to secure a proper accounting, and are (in no different position from legatees. See 11 R. C. L., p. 180, section 196. The proceeding in this case is in the nature of a devastavit, as well as exceptions to a final account, as provided in section 1746, Code 1930.

In view of the fact that the liability, so far as the surety is concerned, is, for the first time, fixed by this decree, and is rather an unusual proceeding, we have determined that the surety shall be liable for interest at 6 per cent. per annum from the date of this decree. 9 C. J., pp. 131-133, and sections 243, 244.

A final decree will be entered here in accordance with this opinion, and the case will be remanded to the court below for the enforcement hereof and distribution of the estate.

Reversed, and decree entered here.